**Benjamin Frederick BURKS et al., Appellants,**

v.

**Dr. D. W. MEREDITH, Appellee.**

**No. 5669.**

Court of Civil Appeals of Texas, Waco.

Dec. 30, 1976.

As Modified on Denial of Rehearing Feb. 3, 1977.

Hurley & Sowder, Lubbock, Kolander & Templeton, Amarillo, for appellants.

Stokes, Carnahan & Fields, Richard E. Stokes Jr., Amarillo, Bill Sheehan, Sheehan & Dubuque, Dumas, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by appellants (parents, widow, and son of Gary Burks), from take nothing judgment rendered against them on a jury verdict, in a medical malpractice suit against appellee Dr. Meredith.

Appellants filed malpractice suit against appellee Dr. Meredith alleging Gary Burks entered Dumas Hospital on November 30, 1974 after having been shot thru the abdomen; that Dr. Meredith (a general practitioner who performs surgery) was retained to treat Gary; that on December 1, 1974, Dr. Meredith performed surgery on Gary, discovered perforation of the colon, sutured the hole, put the patient on nasogastric suction, fluids and antibiotics; that subsequently Gary developed complications including adhesions, and a second surgery was performed during which Dr. Meredith punctured the colon; that Dr. Meredith then called Dr. Raul Puelma (a Board Surgical Specialist) to take over the case; that Gary gradually worsened until he died in Galveston John Sealy Hospital of peritonitis.

Appellants alleged Dr. Meredith negligent in a number of particulars, proximately causing the death of Gary Burks, to appellants' damage.

Trial was to a jury which found for Dr. Meredith on all issues submitted summarized as follows:

1) Dr. Meredith was not negligent in failing to consult with a specialist in surgery concerning Gary Burks on December 1, 1974.

2) Dr. Meredith was not negligent in failing to refer Gary Burks to a specialist in surgery on December 1, 1974.

3) Dr. Meredith was not negligent in failing to consult with a specialist concerning Gary Burks between December 1, and December 9, 1974.

4) Dr. Meredith was not negligent in failing to refer Gary Burks to a specialist between December 1 and December 9, 1974.

5) Dr. Meredith was not negligent in failing to consult with a specialist in surgery concerning Gary Burks on December 10, 1974, prior to the time he did so.

6) Dr. Meredith was not negligent in failing to refer Gary Burks to a specialist in surgery on December 10, 1974, prior to the time he did so.

7) Dr. Meredith was not negligent in failing to perform exteriorization, decompression or colostomy on Gary Burks on December 1, 1974.

8) Dr. Meredith was not negligent in the manner he performed surgery on Gary Burks on December 1, 1974.

9) Dr. Meredith was not negligent in failing to lavage or irrigate Gary Burks' wound or surrounding tissue with saline solution or antibiotics on December 1, 1974.

10) Dr. Meredith was not negligent in permitting Gary Burks nourishment by mouth prior to the second surgery.

11) Dr. Meredith did not fail to adequately inform Gary Burks of the risks involved in the surgery of December 10, 1974.

The trial court rendered take nothing judgment on the verdict.

Appellants appeal on 7 points contending the trial court committed reversible error:

1) In excluding testimony by a Dumas surgeon as to the standard of care of general practitioners in Dumas.

2) In excluding testimony of a treating Dumas surgeon as to the standards

of care for surgeons in Dumas at the time defendant general practitioner (who had ceased colon surgeries 10 years previous) chose to perform 2 colon surgeries in a 10 day period upon deceased without any consultation with any surgeon or referral to a surgeon when there was evidence the failure to consult or refer to a surgeon was negligence under Dumas standards.

3) In refusing new trial because the jury's answers to Issues 1 and 2 (defendant's failure to consult with, or refer to, a surgeon on December 1, 1974) are against the great weight and preponderance of the evidence.

4) In refusing new trial because of jury misconduct.

5) In refusing to allow plaintiffs' exhibits 1 and 2 into the jury room, upon request of counsel.

6) In refusing new trial because the jury's answer to Issue 11 (Informed consent) is against the great weight and preponderance of the evidence.

7) In refusing new trial because the jury's answer to Issue 6 (whether defendant was negligent in failing to refer patient to a specialist in surgery before he did on December 10, 1974), is against the great weight and preponderance of the evidence.

On December 1, 1974, Gary Burks was shot in the lower abdomen. He was taken to Dumas Hospital, and his family physician Dr. Meredith was called. Dr. Meredith examined him, found two wounds, and his best medical judgment was that something had to be done to save the boy's life. The only way Dr. Meredith could determine the damage was to open the abdomen and examine it. Dr. Meredith is a general practitioner who also performs surgery, and has performed some 1000 abdomen operations and assisted in another 1000. The situation was an emergency. Upon surgery Dr. Meredith found the bullet had penetrated the boy's colon releasing a small amount of feces. Dr. Meredith considered primary closure of the wound, colostomy, or an exteriorization of the wound, but felt primary closure would be best procedure. After performing a primary closure he used sponges with saline solution to clean the area. He felt that irrigation or use of neomycin presented problems. He put Gary on 2 antibiotics and nasal suction. During the first 4 days Gary took nothing by mouth. On the fifth day he began to walk, had a bowel movement and began to take liquids. On the tenth day, December 10, Gary started projectile vomiting, which was an indication of a total obstruction. Dr. Meredith consulted with Dr. Wright and concluded the obstruction was caused by an adhesion and that surgery was necessary to relieve the obstruction. Dr. Meredith told Gary he had a bowel obstruction and that they were going to have to open his abdomen to relieve the obstruction. After opening the boy's abdomen no pus was found which is an indication there was no infection. Dr. Meredith then began to loosen the adhesion. One adhesion was on the old wound site, and when Dr. Meredith attempted to free it, he opened the old suture line on the colon about the size of the tip of his finger. Dr. Meredith felt that complicated surgery was going to be required. He called Dr. Puelma a Board Surgeon and surgery specialist who came in about 20 or 30 minutes. Dr. Puelma in freeing the adhesion and attempting to bring the colon out by exteriorization tore the colon all the way across, causing the entire fecal contents to empty into the boy's abdomen area. The boy was taken to John Sealy Hospital in Galveston where he later died of infection of the abdominal cavity.

On the trial appellants' witness Dr. Lacy, a general practitioner familiar with the standards of care for general practitioners in Dumas raised several issues as to negligence on the part of Dr. Meredith, including the failure to consult with or refer to a specialist in surgery before he did.

The trial court excluded portions of the deposition of Dr. Puelma, the surgery specialist called into the case on December 10th.

Under points 1 and 2 appellants complain of the exclusion from the jury of certain deposition testimony of Dr. Puelma.

■ A specialist is generally expected to possess a higher degree of skill and learning than a general practitioner. The general practitioner is not required to consult with a specialist, on every conceivable complication that may arise in his practice. If he exercises the care and skill of other physicians similarly situated, he is not responsible for an error of judgment even though a specialist would not have made the same mistake. But there is a duty to seek consultations with, or refer the patient to a specialist when he knows, or in the exercise of reasonable care should know, that the services of a specialist are indicated. Here, as in other cases of alleged medical malpractice, the defendant is to be judged on the standards and practice of his profession. If there is expert testimony fairly supporting the conclusion that a reasonably careful and prudent general practitioner would have sought consultation under the same or similar circumstances, the trier of fact is entitled to find the defendant was negligent in failing to do so. *King v. Flamm,* Tex.S.Ct., 442 S.W.2d 679.

■ But what constitutes negligence or malpractice is a mixed question of law and fact that can only be determined by the trier of fact on the basis of the evidence admitted and instructions given by the court. A medical expert is not competent to express an opinion thereon. The question of what a reasonable and prudent doctor would have done under the same or similar circumstances, must also be determined by the trier of fact after being advised concerning the medical standards of practice and treatment in the particular case. *An expert witness can and should give information about these standards without summarizing, qualifying or embellishing his evidence with expressions of opinion as to the conduct that might be expected of a hypothetical doctor similarly situated. The latter is not an appropriate subject for expert testimony. Snow v. Bond,* Tex.S.Ct., 438 S.W.2d 549.

■ Thus, a doctor cannot testify that a certain procedure is malpractice or negligence. The doctor should state the standard of care in a given locality, and other evidence show what the defendant actually did. The jury then determines whether the defendant met the standard of care.

■ We will examine the excluded testimony of Dr. Puelma.

The first appears at page 406 of the statement of facts.

"Q. Okay. Now doctor, if a general practitioner in Dumas attempted to perform a repair of a perforation wound to an unprepared colon in November of 1974, would he be conforming to those fundamental minimum standards in Dumas, Texas, and I might say as practiced by a majority of general practitioners in Dumas?"

The second appears on page 410:

"Q. Now, I want you to answer me whether or not the decision on this day by Dr. Meredith to tackle that surgery was the correct decision or an incorrect decision based upon the minimum standards for a general practitioner in Dumas, and I'm talking about Doctor, by minimum I don't mean below medical reasonable care".

The next appears on page 412:

"Q. I'll rephrase the question and say if a general practitioner attempts to perform an exploratory laparotomy and closure or repair of a perforation wound of an unprepared colon, by what standards would you judge his actions, by the standards of a surgeon or by the standards of a general practitioner?

A. Obviously, whenever there is a surgical problem, I judge it as a surgeon".

Another appears on page 416:

"Q. Had you an opportunity to observe Dr. Meredith's work in Dumas during the years 1967 through 1974?

A. Yes.

Q. Is he a competent surgeon to do this type of surgery, and I'm talking about a repair of a perforating wound to an unprepared colon?

A. Well.

Q. Now I want to know, first off, can you answer that question 'yes' or 'no'?

A. Your question is a little bit complex, because you ask me whether I've seen Dr. Meredith perform standard operations that all the general practitioners do, and he does them excellently, real good, the usual hysterectomies and gall bladders and appendectomies and hernias, things like that. As far as his manual ability in handling tissues, I think he is excellent. He knows how to handle tissues, * * * The man has good hands and works good, but that is not enough, what makes a surgeon.

Q. What else does?

A. Judgment, experience, general surgical principles, knowledge of them, knowledge of physiology, knowledge of pathology, knowledge of possible complications to anticipate. So I think his technical ability to handle the tissues is no objection, he is excellent. But, Dr. Meredith doesn't have the broad surgical mind to be able to make judgments and to be able to make decisions about complicated surgical problems."

The foregoing objected to portions of Dr. Puelma's deposition inquires of the witness as to the ultimate question which is prohibited by the *Snow* case, supra. While Dr. Puelma's answers have not all been recited, many are unresponsive to the question asked, or based on the standard of a Board certified surgeon.

The trial court did not err in excluding the deposition testimony.

■ Point 3 asserts the jury's answers to Issues 1 and 2 are against the great weight and preponderance of the evidence, and point 7 asserts the jury's answer to Issue 6 against the great weight and preponderance of the evidence. As noted, Issues 1 and 2 found Dr. Meredith was not negligent in failing to consult or refer Gary Burks to a specialist in surgery on December 1, 1974. And Issue 6 found Dr. Meredith not negligent in failing to refer to a specialist before December 10.

There is evidence Dr. Meredith was a surgeon but not a specialist. He had performed bowel surgery and had treated gunshot wounds. He had performed or assisted in some 2000 abdomen operations. The case was an emergency. There is medical evidence that it was not necessary for a general practitioner who performs surgery to call in a specialist in a case of this type. The second surgery was necessary to relieve an obstruction caused by adhesions. There is evidence Dr. Meredith had freed abdominal surgery adhesions many times. Dr. Cranfill testified that a general practitioner surgeon in Dumas could have handled the situation. From the record as a whole findings 1, 2 and 6 are not against the great weight and preponderance of the evidence. *In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660.

■ Point 4 asserts a reversal is required on account of jury misconduct. Appellant asserts the juror Mrs. Morse made statements in the jury room that she had nurses training, that adhesions occur frequently and that people die from complications all the time. Mrs. Morse denied having made such statements except for the fact she had nurses training; and two other witnesses testified the only thing they heard Mrs. Morse say was that she had had nurses training.

The trial court overruled motion for new trial thus presumably finding all facts in support of its judgment, and that no misconduct occurred. *Brawley v. Bowen*, Tex. S.Ct., 387 S.W.2d 383.

■ Point 5 asserts the trial court erred in refusing plaintiff's exhibits 1 and 2 to be taken into the jury room upon request of counsel. These exhibits were the hospital records from the Dumas and Galveston hospitals. No member of the jury asked to see the exhibits, and one juror testified the jury had the exhibits well in mind.

The trial court's action if error was harmless. Rule 434 TRCP.

■ Point 6 asserts the jury's answer to Issue 11 is against the great weight and preponderance of the evidence. Issue 11 found that Dr. Meredith did not fail to

adequately inform Gary Burks of the risks involved in the surgery of December 10, 1974.

The evidence is that Dr. Meredith told Gary Burks before the second surgery that there was an obstruction in his abdomen and that it would have to be relieved by a surgical operation, and Gary signed a consent for the operation. Under the record there is no doubt but that the surgery was necessary and that Gary understood that. Under the record as a whole such finding is not against the great weight and preponderance of the evidence. *In re Kings Estate,* supra.

All appellants' points are overruled.

AFFIRMED.