**Rodger E. COAN, Appellant,**

v.

**Charles E. WINTERS, Jr., D.O., Appellee.**

**No. 2–82–089–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 17, 1983.

Rehearing Denied March 10, 1983.

Timothy E. Kelley, Dallas, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, and Richard L. Griffith, Fort Worth, for appellee.

Before JORDAN, HUGHES and ASHWORTH, JJ.

## OPINION

JORDAN, Justice.

This is a medical malpractice case brought by appellant against the appellee in which the trial court rendered a summary judgment in favor of appellee. The summary judgment proof consisted of hospital records and the oral depositions of two doctors. There were no affidavits, interrogatories, or other summary judgment proof.

We reverse and remand.

Wanda Yvonne Coan, a thirty seven year old female, wife of appellant herein, died on March 19, 1978 in the Arlington Memorial Hospital, after suffering a ruptured berry aneurysm on March 17, 1978. She was transferred to the Arlington Memorial Hospital on March 15, 1978, at the insistence of her family, after being hospitalized at the Hood General Hospital, Granbury, Texas, under the care of the defendant, Dr. Charles E. Winters, Jr., since March 12, 1978. Dr. Winters did not order her transferred.

She was admitted to the Hood General Hospital on March 12th with an emergency room diagnosis "hypertensive crisis, possible transient cerebro-vascular changes." The hospital records show that she had previous-

ly been under the care of Dr. Winters for several years for, among other things, hypertension or high blood pressure.

When she was transferred from Hood General Hospital to the Arlington Memorial Hospital, she was seen by Dr. Darwin Hale, M.D., a general or family physician, whose admitting diagnosis was "cerebro-vascular accident with sub-arachnoid bleeding—that was number one. Number two, rule out leaking berry aneurysm; number three rule out tumor with hemorrhage." She was then immediately referred to Dr. Lito Porto, M.D., a neurosurgeon.

Dr. Porto, after examination, concluded Mrs. Coan had suffered a brain hemorrhage, and after performing an angiogram, concluded that she had two berry aneurysms, one of the right, internal, carotid artery, and one of the right middle cerebral artery. He scheduled her for surgery the next morning and she expired the night of March 19, 1978, before the surgery could be performed.

Appellant, the surviving husband of Mrs. Coan, filed a very general petition in the District Court of Hood County, alleging that the appellee, Dr. Winters, was guilty of various acts and omissions of negligence which were a proximate cause of Mrs. Coan's death. The trial court granted the summary judgment based on the hospital records and the depositions of Dr. Hale and Dr. Porto. The appellant offered no summary judgment proof.

There are two points of error raised in appellant's brief, both of which we sustain.

The first point of error contends that the trial court erred in basing the summary judgment on inadmissible testimony of Dr. Porto. His contention is that Dr. Porto was asked, in effect, whether or not Dr. Winters was negligent in his care and treatment of Mrs. Coan. In Dr. Porto's deposition, appellee's counsel, after propounding a long hypothetical question, asked the doctor if he was familiar with the standard of care that was exercised or should have been exercised by treating physicians in the Hood County, Parker County, Tarrant County area in 1977 and 1978. Dr. Porto answered that he was familiar with the standard of care and was then asked if he had an opinion, based on his review of the records, and his treatment of Mrs. Coan, whether or not Dr. Winters exercised that care and treatment that would fall within that standard of care. Dr. Porto said that he did have an opinion and after being asked what that opinion was said: "That he treated correctly."

We agree with appellant's contention that the question posed to Dr. Porto was too broad and general and simply, in reality, asked the doctor, without a showing of what the standard of care in the area was, whether or not Dr. Winters' care and treatment would fall within the standard of care. We hold that this was simply another way of asking generally whether or not the doctor was negligent or acted improperly in his treatment and care of his patient. Also, we hold that the answer, "That he treated correctly.", was simply another way of saying the doctor was not negligent or did not act improperly.

Appellee should have first asked the doctor what the standard of care for Mrs. Coan's condition was and then asked specifically whether or not specific conduct of Dr. Winters' met that standard of care. The questions posed in this case simply asked the broad, general question of whether or not his overall care, without any specificity, came within the standard of care, with which Dr. Porto claimed to be familiar.

The medical standard of care is the threshold question in a medical malpractice case and that must be established so that the fact finder can determine whether the doctor's act or omission deviated from the standard of care to the degree that it constituted negligence or malpractice. *Stanton v. Westbrook,* 598 S.W.2d 331 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). Testimony by a medical expert of whether a defendant doctor was negligent, or of what constitutes negligence or malpractice on the part of a defendant doctor, or what that medical expert would have done, is inadmissible in a medical mal-

practice suit. *Christian v. Jeter,* 445 S.W.2d 51 (Tex.Civ.App.—Waco 1969, writ ref'd. n.r.e.); *Snow v. Bond,* 438 S.W.2d 549 (Tex. 1969); *Burks v. Meredith,* 546 S.W.2d 366 (Tex.Civ.App.—Waco 1976, writ ref'd. n.r. e.). An expert witness in a medical malpractice case should state what the standard of care for the specific disease or condition is in a given locality and then state what conduct of the defendant doctor violated or breached that standard of care. *Snow v. Bond, supra; Burks v. Meredith, supra.* Then, unless the evidence shows as a matter of law that the doctor is not negligent or that his negligence, if any, was not a proximate cause of his patient's injury, the jury is to determine whether the doctor met the standard of care.

▪ Appellee insists that the question posed to Dr. Porto in this case is sanctioned and approved by the case of *Smith v. Guthrie,* 557 S.W.2d 163 (Tex.Civ.App.—Fort Worth 1977, writ ref'd. n.r.e.). We disagree. The question suggested by this court in *Smith v. Guthrie, supra,* was this:

> Based upon plaintiff's exhibit # 2 (hospital records) which has been admitted into evidence, is a diagnosis of arteriosclerotic heart disease, myocardial ischemia or myocardial infarction against the standard medical practice as found in the Dallas-Fort Worth area?

It is obvious that this question asked if a particular act or conduct of the doctor was against the standard medical practice in the area. That question is quite different than the one posed in the case sub judice, which actually only asked the expert witness if the appellant doctor's general conduct met the general standard of care, or, in other words, if the doctor was negligent. This questioning and response thereto did not establish summary judgment proof of an absence of any negligence on the part of the appellee. There is no showing by this evidence, for instance, that Dr. Winters was not negligent, under the circumstances, in failing to do a spinal tap in the Hood General Hospital or in failing to refer her immediately to a neurosurgeon. Appellant's first point of error is sustained.

▪ In his second point of error appellant contends that appellee's summary judgment proof does not meet the requirements of Tex.R.Civ.P. 166–A(c) and that the granting of the summary judgment was thus improper.

Tex.R.Civ.P. 166–A(c), provides:

> A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or, of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of exterts if the evidence *is clear, positive direct, otherwise credible and free from contradictions and inconsistencies and could have been readily controverted.* [Emphasis added.]

Section (c) was amended by the legislature in 1978. Prior to this amendment the rule did not expressly authorize the consideration of either of the testimonial evidence of an interested witness or the opinion of an expert in support of a motion for summary judgment. The amended rule expressly provides for the consideration of both types of testimony in support of a motion for summary judgment and requires that such testimony be uncontradicted, clear, direct and positive, free of circumstances tending to discredit or impeach, and readily controverted. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979); *Duncan v. Horning,* 587 S.W.2d 471 (Tex. Civ.App.—Dallas 1979, no writ); *Cloys v. Turbin,* 608 S.W.2d 697 (Tex.Civ.App.—Dallas 1980, no writ).

However, the amendment of rule 166–A(c) in 1978 in no way changed the burden of proof in a summary judgment case. The burden of introducing proof to establish the right to summary judgment is still on the movant, and that burden shifts to the non-movant only if the movant's evidence meets the criteria of rule 166–A(c) as amended and negates all genuine issues of material fact with respect to an essential element of the non-movant's cause of action. *Cloys v. Turbin, supra; City of Houston v. Clear Creek Basin Authority, supra; State v. American Legion Post No. 58,* 611 S.W.2d

720 (Tex.Civ.App.—El Paso 1981, no writ). The movant must still establish by summary judgment proof that as a matter of law there was no genuine issue of fact as to one or more of the essential elements of the non-movant's cause of action.

We do not think that the summary judgment proved in this case, consisting of the hospital records and the depositions of Drs. Hale and Porto, is evidence that is "clear, positive direct, otherwise credible and free from contradictions and inconsistencies . . ." as required by rule 166–A(c). The evidence presented by defendant did not, in our opinion, show as a matter of law that there was no evidence of negligence on the part of the appellee. We believe that this evidence does contain contradictions and inconsistencies, as well as direct evidence as to the probability of negligence on the part of Dr. Winters.

In his deposition, Dr. Hale testified that after she was admitted to the Hood General Hospital in Granbury, he "[R]eally could not determine what was done for her there much more than apparently she was sedated and observed closely." He said, "She was hospitalized at Granbury at Hood General Hospital where she was essentially, as far as I can determine, sedated and watched." Dr. Hale also testified in effect that when he saw Wanda Coan at the Arlington Memorial Hospital on March 15, she was in substantially the same condition as when she left the Hood General Hospital, and that she had all of the symptoms of intracranial bleeding at the time of the admission to Hood General Hospital where she was seen by Dr. Winters and that nothing was done for her when she was in that hospital. The hospital records did show that an effort was made to reduce her blood pressure but that is apparently all that was done and she never was referred to a specialist. Dr. Hale also testified that when he first saw Mrs. Coan on the night of March 15, 1978 it was obvious to him that "something is going on in her head" and "it was obvious to me that this lady had some intracranial pathology; and so I talked with Dr. Acosta and Dr. Porto (neurosurgeons) to get them in on the case as consultation."

He further testified that what he first observed in this lady was sufficient for him not to do a spinal tap to come to the conclusion that she had some problem in her head which required the services of a specialist. He immediately referred her to Dr. Porto, a neurosurgeon.

Dr. Porto also testified that the standard of care for a general practitioner faced with a situation like Mrs. Coan had, would be to refer the patient to a neurosurgeon, as Dr. Hale did.

We think that this testimony, along with other testimony found in the two depositions, was sufficient to raise a fact question of whether or not Dr. Winters was in any manner negligent in his care and treatment of Mrs. Coan and to therefore preclude the rendition of summary judgment.

Appellant offered no summary judgment proof and was not required to do so because appellee's summary judgment proof was not sufficient to shift the burden of proof on the question of the summary judgment to appellant.

Since we have held that appellee failed in his burden to show an absence of negligence as a matter of law, it is not necessary to discuss whether or not appellee established a lack of proximate causation as a matter of law. However, we do note that Dr. Porto stated that if Mrs. Coan had had the surgery that her chances that the operation would be successful were better than 50/50, and that a successful operation would have meant that her life would have been preserved for some period of time. This evidence, we think, was sufficient to raise a fact issue on a proximate cause.

Appellant's second point of error is sustained.

■ In his third and fourth counterpoints, appellee says that the appellant has waived his right to review and/or reversal in this case by his failure to assign specific error and argument thereunder in his brief to three independent grounds supporting the judgment of the trial court. Appellee, in his motion for summary judgment, relied

on the following three general propositions of law: (1) a presumption exists in favor of a defendant physician that he had discharged his full duty, and that presumption may be defeated only by the offer of affirmative proof that such breach of duty, if any, resulted in injury to the plaintiffs; (2) As a matter of law negligence is never imputed from mere results, nor is any inference thereof allowed to be indulged in against the defendant physician; (3) as a matter of law the physician is not a guarantor or insuror of the health and welfare of the patient.

Appellee insists that since the trial court granted the summary judgment on all of the grounds raised in the motion for summary judgment, that the three above stated grounds should have been addressed by assignment of error and argued in appellant's brief. There is no merit in this argument for the reason that the three independent grounds asserted by appellee in his motion for summary judgment, recited above, are general principles of law, true in any malpractice case and do not, in and of themselves, entitle a defendant to a summary judgment. Moreover, we believe that each of these independent grounds of relief raised in the motion for summary judgment, and not assigned as error or brief by appellant, are satisfactorily answered by the evidence in the record, some of which we have recited above in this opinion.

The judgment of the trial court is reversed and remanded for trial of this case on the merits.

Costs are assessed against appellee.