**Malcolm B. WHEELER, et al., Appellants,**

v.

**Dr. Alfonso ALDAMA–LUEBBERT, Appellee.**

**No. 01–85–0426–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 6, 1986.

gains and neither is in a position to take advan-    tage of the exigencies of the other.

John Gano, Gano & Donovan, P.C., Houston, for appellants.

Joseph R. Alexander, Jr., Andrews & Kurth, Houston, for appellee.

Before EVANS, C.J., and JACK SMITH and WARREN, JJ.

## OPINION

JACK SMITH, Justice.

This is an appeal from a take-nothing summary judgment in a medical malpractice suit. The appellants, plaintiffs in the trial court, raise three points of error, all of which allege that the judgment of the trial court should be reversed because there are fact issues to be resolved.

On or about February 27, 1982, Malcolm B. Wheeler was admitted to Methodist Hospital. As a result of numerous tests, appellee made a diagnosis of ruptured cerebral aneurysm causing an intracerebral hematoma, or hemorrhage. Surgery was performed. Wheeler experienced some postoperative "left-sided" weakness, but made rapid improvement for approximately three days. On March 3, Wheeler had a temperature elevation, and on March 4, more left-side weakness and lethargy were detected. Based on this information, the appellee concluded that Wheeler was experiencing vasospasms and also brain swelling as a result of the trauma of the massive hemorrhage. The appellee ordered further diagnostic tests and antibiotic treatment. Four days later, on March 8, culture reports were received, and it was determined that Wheeler had bacterial meningitis.

On March 12, surgery was performed to deliver antibiotics directly into the spinal fluid and the brain to aid in the treatment of the meningitis. By March 17, the meningitis appeared to be cured.

Wheeler continued to suffer from left-sided weakness, which appellee testified was permanent damage caused by the cerebral arterial spasm. It was the appellee's opinion that the spasm prevented the brain from receiving adequate blood, causing a stroke in the affected area of the brain. Wheeler subsequently transferred to another hospital.

Appellants filed suit against the Methodist Hospital, the appellee, and his partner, individually and d/b/a Associates in Medicine, P.A. They alleged: (1) failure to correctly supervise Wheeler's condition; (2) failure to correctly diagnose his condition; (3) failure to correctly treat the condition; and (4) failure to timely stop the bleeding in Wheeler's brain.

In their first two points of error, the appellants contend that the trial court erred in granting the summary judgment because appellee's summary judgment proof, appellee's verified affidavit, is insufficient to establish that there is no genuine issue of material fact. They assert that

appellee's affidavit is based upon hearsay, speculation, and conclusions, and conclude that it is of no probative force. Additionally, they allege that the affidavit is deficient because the appropriate standard of care cannot be determined therefrom.

■ When the movant in a summary judgment proceeding is a defendant, he is entitled to prevail on his motion if he establishes, as a matter of law, that there exists no genuine issue of material fact as to one or more elements of plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Federated Department Stores, Inc. v. Houston Lighting & Power Co.*, 646 S.W.2d 509, 511 (Tex.App.—Houston [1st Dist.] 1982, no writ). Once the defendant has negated, as a matter of law, such elements of plaintiff's cause of action, the plaintiff has the burden of introducing evidence that raises issues of fact with respect to the elements negated by the defendant's summary judgment evidence. *Federated Department Stores, Inc.*, 646 S.W.2d at 511. This evidence must be of probative force. *Woolhouse v. Tolchin Instruments, Inc.*, 601 S.W.2d 106 (Tex.Civ.App.—Dallas 1980, no writ).

Tex.R.Civ.P. 166-A(c) in material part provides:

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

The appellants assert that the trial court should not have considered the affidavit testimonial evidence of the appellee because he was an interested witness and was merely stating his conclusory opinions.

Prior to 1978, the appellants' assertions would have been correct. However, in 1978 Rule 166-A(c) was amended, and the amended rule expressly authorized such testimony in support of a motion for summary judgment, as long as such testimony is "uncontradicted, clear, direct and positive, free of circumstances tending to discredit or impeach, and readily controverted." *Coan v. Winters*, 646 S.W.2d 655, 658 (Tex.App.—Fort Worth 1983, writ ref'd n.r. e.). Appellee's affidavit stated as follows:

My name is Alphonso E. Aldama-Luebbert, M.D. I am over the age of eighteen (18) years and am in all respects competent to make this Affidavit. I have personal knowledge of each of the facts and opinions stated herein.

I am a physician specializing in the practice of neurosurgery. I received my M.D. from the Baylor College of Medicine. I did my internship at St. Luke's Episcopal Hospital in Houston, Texas. My residency was through the Baylor College of Medicine where I also participated in a neurosurgery residency. I am certified as a neurosurgeon by the American Board of Neurological Surgery and a member of the American Medical Association, Harris County Medical Society and Houston Neurological Society. I am licensed to practice medicine by the Board of Medical Examiners of the State of Texas and my license is on file with the appropriate authorities of Harris County.

Mr. Malcolm Wheeler was admitted to the Methodist Hospital during the early morning hours of February 27, 1982. He had been life-flighted from the Community Hospital in Brazosport, Texas and presented with a history, reported by a family member, of suddenly collapsing to the street while walking his dog. A CT scan was performed and showed a right sided intercerebral hematoma and subarachnoid hemorrhage. Mr. Wheeler was then taken to angiography where a right middle cerebral aneurysm was visualized. A correct diagnosis of right middle cerebral aneurysm bleed with right frontal and temporal lobe intracerebral hematomas was made. Mr. Wheeler was then taken to the operating room where right frontal, temporal and parietal cra-

niotomies were performed with evacuation of an intercerebral hematoma and clipping and obliteration of a middle cerebral artery aneurysm.

Later in his hospital stay, other procedures were performed for treatment of plaintiff's condition. On March 12, 1982, a left frontal Ommaya reservoir ws [sic] placed to aid in the treatment of the gram negative meningitis and possible ventriculitis. On April 6, 1982, the Ommaya reservoir was removed and a left ventricular peritoneal shunt placed as treatment for Mr. Wheeler's hydrocephalus. Lastly on May 27, 1982, the left ventricular peritoneal shunt was revised because the original shunt was malfunctioning. Of course, I was continuously monitoring Mr. Wheeler while he was under my care.

I am familiar with the standard of care for the examinations, operative procedures and treatment of Mr. Wheeler and it is my expert opinion that each one of my examinations, operative procedures and treatments of Mr. Wheeler was in accordance with the appropriate standard of care for such, and were the same examinations, operative procedures and treatment which would have been performed by a reasonably prudent physician acting under the same or similar circumstances.

I have reviewed Plaintiff's First Amended Original Petition and I specifically deny each and every allegation contained in that instrument. At all times I properly and correctly supervised, monitored and knew Mr. Wheeler's condition, the treatment I rendered for Mr. Wheeler was done correctly and properly, my diagnosis of Mr. Wheeler's condition was correct and proper and I timely and properly stopped the bleeding into Mr. Wheeler's brain; all consistent with the appropriate standard of care. Further, it is my expert opinion that the damages Plaintiffs now complain of in their First Amended Original Petition were in no way caused by the examinations, operative procedures and treatments performed by me for Mr. Wheeler.

All of the opinions I have expressed herein are based upon a reasonable degree of medical probability.

■ In addition to the appellants' challenges to the appellee's affidavit that we have heretofore discussed, the appellants challenge the affidavit because it allegedly fails to establish the appropriate standard of care. In support of this contention, appellants cite an unpublished opinion from this Court. An unpublished opinion of this Court or any other court has no authoritative value.

They also cite *Coan v. Winters*, 646 S.W.2d 655, in support of their contention. We find that *Coan* is distinguishable from the present case. In *Coan* the summary judgment proof consisted of hospital records and the oral deposition of two doctors. There were no affidavits. The summary judgment apparently was based on one of the doctors' testimony, and more specifically upon a question where he was asked, in effect, whether or not the defendant doctor was negligent in his care and treatment of the plaintiff. The doctor's response was that "he treated correctly." No standard of care was enumerated.

■ In the present case, the appellee's affidavit stated with specificity each examination, each operative procedure, and each treatment administered to Mr. Wheeler. He stated that he correctly supervised, monitored, and knew Mr. Wheeler's condition; that the treatment he gave Mr. Wheeler was correct and proper; that his diagnosis was correct and proper; and that all of his acts were consistent with the appropriate standard of care. His affidavit also states that he is familiar with the standard of care for examinations, operative procedures, and treatment, and that each one of his acts was in accordance with the appropriate standard and all were the same examinations, operative procedures, and treatment that would have been performed by a reasonably prudent physician acting under the same or similar circumstances. In effect, in his affidavit the appellee has stated that he not only knew

what the standard of care should have been for the appellant, but that his treatment and diagnosis of the appellant was that standard of care and was the same standard of care used by other reasonably prudent physicians acting under the same or similar circumstances.

The appellee's affidavit is clear, positive, and direct, otherwise credible, and free from contradictions and inconsistencies. It is readily controvertible, and the expert opinion contained in it is limited to subject matter that the trier of fact must be guided solely by the opinion testimony of an expert. *See Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965).

Although the standard of care is not defined in terms of "locality" or "same school," it exemplifies the modern trend away from such defined standard of care. In *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex.1977), the Texas Supreme Court reaffirmed the reasonable and prudent physician standard and made no mention of "locality" rule requirements when it held that the standard of care is as follows: "A physician who undertakes a mode or form of treatment which a reasonable and prudent member of the medical profession would undertake shall not be subject to liability for harm caused thereby to the patient." The standard of care articulated in appellee's affidavit is sufficient. Appellants' first two points of error are overruled.

In their third point of error, appellants contend that the trial court erred in granting appellee's motion for summary judgment because even if appellee's affidavit was sufficient to negate one or more elements of appellants' cause, appellants have raised material issues of fact in their reply, which were supported solely by appellee's deposition testimony.

■ Appellants' cause of action is based upon medical malpractice. To recover, appellants must establish: (1) a duty requiring the physician to conform to a certain standard of conduct; (2) the applicable standard of care and its breach; (3) injury; and (4) a reasonably close causal connection between the breach of that standard of care and the harm. *Cloys v. Turbin*, 608 S.W.2d 697, 700 (Tex.Civ.App.—Dallas 1980, no writ).

The appellee negated the elements of appellants' claim regarding breach of the applicable standard of care and any causal connection between such breach and resulting damages. Notwithstanding this negation, the appellants assert that through appellee's deposition testimony, factual issues still exist: (1) regarding appellee's duty, and his breach thereof, to protect Wheeler from infectious disease by using sterile equipment and supervising the sterilization of such equipment; (2) regarding appellee's duty, and breach thereof, to recognize infectious disease; and (3) regarding appellee's duty, and breach thereof, to treat such disease.

■ We first note that appellants' allegations regarding appellee's failure to use sterile equipment or to supervise the sterilization of such equipment have not been pled by appellants. Notwithstanding this failure, if appellants' summary judgment evidence discloses facts that render appellee's position untenable, summary judgment should be denied, regardless of defects that may exist in the pleadings of the non-moving party. *Roberts v. Haltom City*, 543 S.W.2d 75 (Tex.1976).

Appellee testified that he owed a duty to Wheeler to lower the risk of Wheeler's contracting an infection or disease, but that this is not a duty to guarantee against infection. Although the appellants have alleged that there was a breach of the duty, the uncontroverted evidence is that there was no breach of this duty and that all necessary precautions were taken to protect Wheeler from infection. It is undisputed that Wheeler developed meningitis, and the uncontroverted evidence showed that meningitis is a recognized complication of brain surgery, which can develop even though all proper procedures were followed.

Appellants also allege that pursuant to this duty to lower the risk of infection, it

was the appellee's duty to use sterile surgical procedures. There is no evidence of a breach of such duty, and the uncontradicted testimony established that all proper surgical procedures were followed. Based upon his observations made prior to and during the surgery, the appellee testified that all materials and instruments used were sterilized, and all proper sterilization procedures were followed. The appellee further testified that he supervised his operating room personnel regarding gross deviations from proper sterile procedure during surgery, and stated that it is not the physician's duty to actually sterilize the instruments and equipment prior to surgery or to supervise such procedure. He said that such duty is the duty of the operating room personnel.

Appellants further allege that there are also issues of fact regarding appellee's duties, and breach thereof, to timely and properly diagnose and treat the meningitis. The uncontroverted deposition testimony established that appellee monitored Wheeler's condition daily and, as Wheeler's progressive condition altered, that he took the appropriate diagnostic procedures and ordered antibiotic treatments to combat the suspected infection. Wheeler was subsequently cured of the disease by such action.

Finally, the record shows that appellants have failed to raise an issue of fact regarding the causal connection between their allegations of breach of duty and Wheeler's diminished physical status. The uncontroverted testimony establishes that, based on reasonable medical probability, the meningitis in no way caused Wheeler's decreased medical and physical state. The only testimony regarding the causal connection and the resulting damages was that Wheeler's condition was a result of the original hemorrhage in his brain.

Appellants' third point of error is overruled.

This cause of action having been severed from the original proceeding, the judgment of the trial court is affirmed.