Clifton Wayne JOHNSON, Appellant,

v.

George G. SUSAT, M.D., Appellee.

No. 05-88-00345-CV.

Court of Appeals of Texas, Dallas.

May 18, 1989.

Rehearing Denied July 17, 1989.

---

Kenneth H. Molberg, Dallas, for appellant.

Eugene W. Brees, II, Alicia M. Dewey, Austin, for appellee.

Before McCLUNG, KINKEADE and OVARD, JJ.

McCLUNG, Justice.

Clifton Wayne Johnson appeals the trial court's granting of a summary judgment in favor of George G. Susat, M.D. In his second point of error Johnson alleges that the trial court erred in granting summary judgment because Dr. Susat failed to conclusively establish the absence of material fact issues. We agree and reverse the cause and remand to the trial court.

This is a medical malpractice case. On January 13, 1982, Johnson suffered a leg fracture; Dr. Susat performed an operation the next day, installed a metal plate in his leg affixed to the broken bone with eight screws. Johnson was examined by Dr. Susat numerous times over the next year until he determined that the bones had failed to rejoin and that several of the screws used to affix the metal plate had broken. On January 27, 1983, Dr. Susat undertook a second operation in which he removed the hardware and attempted a bone graft. Again the bones failed to properly join. Johnson subsequently changed physicians and underwent a third operation for the correction of his condition.

In his petition Johnson alleged negligence on the part of Dr. Susat in four respects: (1) by failing to properly treat him for the effects of his injury; (2) by placing inadequate hardware into his leg; (3) by failing to diagnose the nonunion involved herein; and (4) by failing to diagnose that the screws had broken. Dr. Susat moved for summary judgment, making the conclusory claim that there was "absolutely no evidence" of Dr. Susat's negligence in connection with "his care and treatment" of Johnson; that Dr. Susat testified through deposition that his management of the case was good; and that Johnson's own expert, Dr. Sutherland, testified through deposition that the procedures used were "acceptable." Dr. Susat also pointed to Dr. Sutherland's testimony that these types of fractures are very troublesome and notorious for not healing properly. Johnson, in response, moved for a continuance or, in the alternative, that Dr. Susat's motion for summary judgment be denied due to the existence of triable essential fact questions. The court denied the motion for continuance and Dr. Susat's motion for summary judgment was granted.

■ In a summary judgment case, the question on appeal, as well as in the trial court, is whether the summary judgment proof establishes that as a matter of law there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); TEX.R.CIV.P. 166–A(c). The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Farley v.*

*Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972).

■ The threshold question in a medical malpractice case is the medical standard of care. That standard must be established so that the fact finder can determine whether the doctor's act or omission deviated from the standard of care to the degree that it constituted negligence or malpractice. *Coan v. Winters,* 646 S.W.2d 655, 657 (Tex.App.—Fort Worth 1983, writ. ref'd n.r.e.). Because Dr. Susat was the movant, he had the burden of negating Johnson's allegations of the breach of the standard of care; that is to say, Dr. Susat had to prove that the applicable standard of care was not breached. Because Dr. Susat had the burden to prove that the standard of care was not breached, he obviously had the duty to tell the court what the applicable standard is. *McCord v. Avery,* 708 S.W.2d 954, 956 (Tex.App.—Fort Worth 1986, no writ.); *see also Coan,* 646 S.W.2d at 657–58. Dr. Susat's summary judgment proof failed to address this threshold issue.

■ In a nonspecific, wholly conclusory motion for summary judgment, Dr. Susat makes the broad assertion that there is "absolutely no evidence" of his negligence. Dr. Susat then discusses testimony which asserts that his management of this case was "good management," that the surgical procedures were acceptable means of treatment, and that this type of fracture is inherently troublesome. Dr. Susat does not indicate where in the record evidence relevant to the applicable standard of care could be located. After a careful reading of all of the summary judgment evidence in this case, we conclude that Dr. Susat wholly failed to establish the relevant standard of care.

The following excerpts from the record show Dr. Susat's counsel's attempts to elicit from Dr. Sutherland the applicable standard of care and whether it was breached by Dr. Susat:

Q. Let me ask the question another way, Doctor. Do you have an opinion as to whether any aspect of Dr. Susat's care and treatment of Clifton Johnson for Mr. Johnson's broken leg fell below the standard of care applicable to Dr. Susat as an orthopedic surgeon in Dallas County, Texas?

MR. WALL: Object to the question. It's so broad and so global that the doctor couldn't possibly respond without counsel giving him a little bit more indication as to what it is he's addressing. You may answer the question, Doctor.

A. The man had what I called a comminuted fracture of his tibia which means it's broken in more than one place, and it's a difficult fracture. It's a difficult place to treat a fracture. The blood supply in this area is difficult.

From what I could see at the time I saw the patient with the screws loose and the plate probably loose, I felt that this was about the same type of treatment that someone else would—some other orthopedic surgeon would do. That's the usual method of treating, one of the methods. There are other methods of treating but that's one of the methods of treating. And the fact that it had not grown together was not unusual.

Q. (By Mr. Brees) Do you believe that any aspect of Dr. Susat's treatment of Mr. Johnson fell below the standard of care applicable to Dr. Susat as an orthopedic surgeon in Dallas County?

MR. WALL: Object. Assumes facts not in evidence. You may answer, Doctor.

A. From what I could see, I mean what looked like to me as usual treatment with a plate, with screws, and with a difficult fracture in the lower half of the tibia or shinbone and it had not grown together and the screws had broken, and that's happened, in my judgment that's what happened, but it's not necessarily above or below the standard. It happens to anybody doing orthopedic surgery at one time or another.

\* \* \* \* \* \*

Q. Doctor, do you have an opinion as to whether the second surgical procedure that Dr. Susat performed on Clifton Johnson—whether Dr. Susat's election to

perform that procedure as opposed to some other type of procedure or the manner in which he performed the second surgery did not comply with the standard of care applicable to Dr. Susat as an orthopedic surgeon in Dallas County?

MR. WALL: Object to leading. Assumes facts not in evidence. You may answer.

A. Well, of course—the only way I can answer that question is to say that if you think you have a nonunion, a bone fracture not growing together or a delayed union where it's going to be too slowly, then the treatment is to do, among other things, a bone graft. That's one thing that you do and he did that.

A bone graft is certainly an acceptable procedure. I noted that the broken screws were in there at that time, also, and x-rays that I took, and I felt even at this time it was going into a nonunion. I don't know.

Q. (By Mr. Brees) But the fact that even after the second surgery that Dr. Susat had performed there had not been a union and perhaps even a nonunion, did that in your opinion indicate that the care and treatment that Dr. Susat had rendered to Mr. Johnson fell below the standard of care applicable to him as orthopedic surgeon in Dallas County?

MR. WALL: Object to leading. Assumes facts not in evidence. You may answer.

A. Well, in my judgment bone graft of a delayed union is an acceptable procedure period. That's really all I can say.

We hold that Dr. Susat failed to clearly state the applicable standard of care and so failed to meet his burden of proof. *McCord*, 708 S.W.2d at 957; *also see Coan*, 646 S.W.2d at 657–58. Further, if, for the sake of argument, we assume that Dr. Susat satisfied his burden to show the applicable standard of care, he has only addressed this standard with regard to Johnson's first two allegations. He did not address the standard of care with regard to either the diagnosis of a nonunion or of the broken screws, relevant to Johnson's third and fourth allegations in his petition. The question of what a reasonable and prudent doctor would have done under the same or similar circumstances must be determined by the trier of fact after being advised of the medical standards of practice and treatment in the particular case. *Snow v. Bond*, 438 S.W.2d 549, 550–51 (Tex.1969). The trial court improperly granted Dr. Susat's motion for summary judgment.

We sustain Johnson's first point of error. We reverse the trial court's judgment, and remand to the trial court.