**Esther GONZALES, Appellant,**

v.

**L.B. OUTLAR, M.D. and South Texas Medical Clinics, P.A., Appellees.**

**No. 13–91–106–CV.**

Court of Appeals of Texas,
Corpus Christi.

May 7, 1992.

Gary L. McConnell, McConnell & Klement, Angleton, for Appellant.

R.D. Cullen, Kemper Stephen Williams, III, Cullen, Carsner, Seerden & Cullen, Victoria, for Appellee.·

Before NYE, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

NYE, Chief Justice.

This is a medical malpractice case. Appellant, Esther Gonzales, sued appellee, L.B. Outlar, M.D., and South Texas Medical Clinics, P.A., for negligence and breach of professional duty by failing to take precautions to prevent or reduce her post-operative blood-clotting problems. Dr. Outlar and South Texas Medical Clinics moved for summary judgment on the basis that no genuine issue of material fact existed regarding two essential elements of her cause of action, breach of duty and proximate cause. The trial court granted a take-nothing summary judgment favorable to Dr. Outlar and the estate of Dr. Outlar, deceased.[1] The trial court severed Ms. Gonzales' suit against Dr. Outlar from her suit against South Texas Medical Clinics. Only Ms. Gonzales' suit against Dr. Outlar is before us on appeal. By a single point of error, Ms. Gonzales argues that the trial

---

1. In February, 1990, Dr. Outlar's counsel filed a "SUGGESTION OF DEATH," stating that Dr. Outlar had died. In April, 1990, the trial court substituted Dr. Outlar's widow, Myrtis Sealy Outlar, independent executrix of the estate of Dr. Outlar, and the estate of Dr. Outlar as party defendant in place of Dr. Outlar.

court erred in granting summary judgment. We reverse and remand.

Ms. Gonzales alleged that in April, 1986, Dr. Outlar examined her for pain in her lower stomach area and diagnosed the presence of a large ovarian cyst. He recommended that she have surgery to remove the cyst. Before having surgery, Ms. Gonzales gave Dr. Outlar her medical records which showed that she had been diagnosed as having a blood-clotting condition, apparently genetic in nature, which caused her problems in prior surgeries. She alleged that although Dr. Outlar knew of her blood-clotting condition, he scheduled her for surgery at a Wharton, Texas, hospital and started preparing for her surgery without taking any available medical precautions to prevent or ameliorate her genetic bleeding condition. At her insistence, Dr. Outlar conducted a preoperative blood-clotting test which showed that she had an extraordinary blood-clotting time. She alleged that Dr. Outlar's failure to take precautions to prevent or reduce her post-operative blood-clotting problems constituted negligence and violated the standard of care which Dr. Outlar owed to her. She also alleged that Dr. Outlar, without her consent, consulted with Dr. Zaleski concerning her blood-clotting condition and that she relied upon Dr. Outlar's use of Dr. Zaleski's services. Dr. Outlar was vicariously liable for all of Dr. Zaleski's negligence, if any. As a direct and proximate result of Dr. Outlar's negligence and breach of professional duty, Ms. Gonzales sustained serious and incapacitating injuries which caused her physical pain and suffering, mental anguish, physical impairment, and loss of earnings, past and future. She also requested exemplary damages.

Dr. Outlar and South Texas Medical Clinics moved for summary judgment on the basis that no genuine issue of material fact existed regarding breach of duty and proximate cause. They asserted that their summary judgment evidence showed that Dr. Outlar, upon examining Ms. Gonzales, made appropriate recommendations and diagnoses, that his diagnoses and treatment of her were correct and proper, that his treatment did not cause or contribute to any of her damages, and that Dr. Outlar's treatment of Ms. Gonzales met the standard of care for a gynecologist. Their summary judgment evidence included Dr. Outlar's affidavit and Dr. Charles Manner's deposition excerpt.

In response, Ms. Gonzales contended that her summary judgment evidence showed that Dr. Outlar's treatment of her was below the usual standard of care for a person with a prolonged bleeding time, that Dr. Outlar's violation of the proper standard of care was a cause of the re-exploration during her first admission and also during her second admission, and that she was not provided with the proper post-operative standard of care. Her summary judgment evidence included Dr. Outlar's and Dr. Manner's deposition excerpts and her medical records.

The trial court granted a take-nothing summary judgment in favor of Dr. Outlar and his estate. The trial court severed Ms. Gonzales' suit against Dr. Outlar from her suit against South Texas Medical Clinics. Only Ms. Gonzales' suit against Dr. Outlar is before this Court on appeal.

■ By her sole point of error, Ms. Gonzales complains that the trial court erred in granting summary judgment favorable to Dr. Outlar. The necessary elements of medical malpractice are the duty of the physician to act according to a certain standard, breach of the applicable standard of care, injury or harm to the plaintiff, and causal connection between the breach of the applicable standard of care and the injury or harm. *Garza v. Levin,* 769 S.W.2d 644, 645 (Tex.App.—Corpus Christi 1989, writ denied); *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). Dr. Outlar contends that his summary judgment evidence, as a matter of law, negated the elements of breach of the applicable standard of care and proximate cause. Ms. Gonzales argues that Dr. Outlar's affidavit is conclusory and, therefore, insufficient to support his summary judgment motion.

■ In his affidavit, Dr. Outlar stated that he was a licensed physician, specializ-

ing in obstetrics and gynecology. In 1966, he became board certified in obstetrics and gynecology, and he was recertified in 1979. He has practiced his specialty in the Wharton, Texas, area for the past twenty-five years. In April, 1986, he examined Ms. Gonzales and diagnosed a pelvic mass. She was later admitted for surgery to remove a pelvic tumor. Before having the surgery, Ms. Gonzales related a history of having a bleeding problem. Before surgery, Dr. Outlar ordered specific tests to determine her platelet count and her bleeding and clotting time. He also consulted with Dr. Zaleski, a hematologist (a physician specializing in blood diseases), regarding her clotting profile and the proper treatment. Dr. Outlar further stated:

> Based on my consultations and on the history given to me, cryopricipitate [sic] and fresh frozen plasma were made available at the time of the surgery and were appropriately administered after the surgery.
>
> I have read the foregoing Motion for Summary Judgment and the facts and statements therein contained are true and correct.
>
> I am familiar with the standard of care of a physician specializing in gynecology and I fulfilled those standards. In my opinion, based upon a reasonable degree of medical probability, the medical assistance I rendered to Esther Gonzales met or exceeded all appropriate standards of care of a physician such as myself practicing in the field of gynecology.
>
> I am familiar with the allegations in the Plaintiff's petition. I specifically deny each and every allegation asserted against me in the Plaintiff's petition. It is further my opinion that the damages, if any, of which the Plaintiff now complains were in no way caused or contributed to by me professionally or otherwise.
>
> All of the opinions and statements I have expressed herein are based upon a reasonable degree of medical probability.

■ The medical standard of care is the threshold question in a medical malpractice case, and the applicable standard of care must be established so that the fact finder can determine whether the physi-

cian's act or omission deviated from the standard of care to the degree that it constituted negligence or malpractice. *Johnson v. Susat*, 773 S.W.2d 601, 603 (Tex. App.—Dallas 1989, writ denied); *Coan v. Winters*, 646 S.W.2d 655, 657 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.). An affidavit is insufficient to prove the standard of care if the expert merely states that he is familiar with the standard of care and that the treatment was within that standard. The affiant must state what the standard is. *Evans v. Conlee*, 787 S.W.2d 570, 572 (Tex.App.—Corpus Christi 1990, writ denied); *Hammonds v. Thomas*, 770 S.W.2d 1, 2 (Tex.App.—Texarkana 1989, no writ). Moreover, affidavits consisting only of conclusions are insufficient to raise a fact issue. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *Life Ins. Co. of Virginia v. Gar–Dal, Inc.*, 570 S.W.2d 378, 381 (Tex.1978).

■ In the present appeal, Dr. Outlar's affidavit is insufficient to establish the standard of care in a specific malpractice case. Dr. Outlar's statements do not provide any measurement by which a trier of fact can determine if the specific medical procedures and techniques used in this case met the standard of expertise held by the medical profession generally. The allegations are not readily controvertible and do not conclusively establish a standard of care. *See Duncan v. Horning*, 587 S.W.2d 471 (Tex.Civ.App.—Dallas 1979, no writ); Tex.R.Civ.P. 166a(c). While medical experts can state their opinions on the ultimate fact of whether conduct amounts to negligence and proximate cause, specific evidence concerning the medical standard of care is required. Thus, Dr. Outlar's affidavit was insufficient to support summary judgment in this case.

Dr. Outlar's summary judgment evidence also included Dr. Charles Manner's deposition excerpt. In his deposition, Dr. Manner stated that Dr. Outlar, as a gynecologist, met the standard of care in the treatment of Ms. Gonzales. However, Ms. Gonzales argues that Dr. Manner's deposition excerpt does not constitute competent summary judgment evidence because it is not sworn to or authenticated. *See Kotzur v. Kelly*, 791 S.W.2d 254, 256 (Tex.App.—Cor-

pus Christi 1990, no writ). In any event, we need not resolve this issue because even if we considered Dr. Manner's excerpt, along with Dr. Outlar's affidavit, Ms. Gonzales' controverting summary judgment evidence raises a genuine issue of material fact regarding breach of duty and proximate cause.

Ms. Gonzales' response included a deposition excerpt of Dr. Manner. In this excerpt, Dr. Manner stated that he practiced medicine in Houston, Texas, and had been a licensed physician since 1978. He was a board-certified internist, specializing in hematology and oncology. He said that von Willebrand's disease was the most likely cause of Ms. Gonzales' prolonged bleeding time. He based his conclusion on laboratory tests performed in March, 1988, which showed that she had von Willebrand's disease. Further, she had two uncles with this disease. Dr. Manner said that he was familiar with the appropriate standard of care for a person with a blood disorder like the one Ms. Gonzales had. He described the standard by saying that if a patient had an abnormal bleeding time, before performing elective surgery on the patient, the patient is evaluated to determine the exact etiology of the abnormal bleeding time. If the patient has von Willebrand's disease, then preoperatively, the patient is given factor-replacement therapy so that at the time of the surgery, the patient will have protein levels comparable to those of a normal person. The additional standard is to continue the factor-replacement therapy to allow the surgical field to be free of the re-accumulation of blood. The therapy is continued until the patient's wound has sufficiently healed. Dr. Manner said that he treats von Willebrand's patients, who have had major abdominal surgery, for about a week, the goal being full replacement therapy. He opined that Dr. Outlar's care of Ms. Gonzales was below the usual standard of care for a person with a blood disorder like the one she had. He said that in Ms. Gonzales's case, the proper standard of care was not met post-operatively. He also opined that the violation of the proper standard of care for the treatment rendered by Dr. Outlar to Ms. Gonzales was a cause of

the "re-exploration" during her first admission and also during her second admission.

The summary judgment evidence showed that Dr. Outlar consulted with Dr. Zaleski concerning Ms. Gonzales' blood problems, clotting profile, and proper treatment. Based upon these consultations, Dr. Outlar treated Ms. Gonzales for her blood problems. The summary judgment evidence also showed that Dr. Outlar's treatment of Ms. Gonzales was below the usual standard of care and that the violation of the standard was a cause of the re-exploration during her first and second admissions.

Without citing the familiar summary judgment rules, Ms. Gonzales' summary judgment evidence, along with the other evidence, raises a genuine issue of material fact, preventing the granting of a summary judgment in favor of Dr. Outlar and his estate. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *R.I.O. Sys., Inc. v. Union Carbide Corp.*, 780 S.W.2d 489, 490 (Tex.App.—Corpus Christi 1989, writ denied).

The trial court's judgment is REVERSED, and the case is REMANDED to the trial court.