George H. CHAMBERS, D.O., Petitioner,

v.

Christine CONAWAY, et vir, Raymond
Conaway, Respondents.

No. D–2195.

Supreme Court of Texas.

Oct. 27, 1993.

Rehearing Overruled April 20, 1994.

Douglas R. McSwane, Jr., Michael E.
Starr, Tyler, for petitioner.

Roger W. Anderson, Tyler, for respondents.

## OPINION

GAMMAGE, Justice.

This suit involves construction of the statute of limitations in medical malpractice actions. Christine Conaway and her husband, Raymond Conaway, sued Dr. George H. Chambers, alleging that Dr. Chambers negligently failed to diagnose Mrs. Conaway's breast cancer. The trial court granted Dr. Chambers' motion for summary judgment on the basis that the two-year statute of limitations set forth in the Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT.ANN. art. 4590i, § 10.01 (Vernon Supp. 1993), barred Mrs. Conaway's claim. The court of appeals reversed and remanded the case, holding that a fact issue exists whether the treatment of Mrs. Conaway's breast condition had ended. 823 S.W.2d 331, 335. We agree with the court of appeals' disposition but not its reasoning. We affirm its judgment remanding the case.

■ Although the summary judgment evidence and pleadings reveal that the parties dispute whether Dr. Chambers rendered certain medical treatment to Mrs. Conaway and whether certain statements were exchanged between them, the standard of appellate review of summary judgment requires us to take as true the evidence and reasonable inferences therefrom favorable to Mrs. Conaway, the non-movant. *See Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). Using this standard, we set forth the following chronology of evidence relevant to determining the applicable limitations.

October 1983: After Mrs. Conaway mentioned to Dr. Chambers, her family physician, that she had discovered a lump in her left breast, Dr. Chambers referred her to a local hospital for a mammogram.

November 1, 1983: A radiologist at the hospital performed a bilateral mammogram and subsequently forwarded to Dr. Chambers a report listing the results. The report indicated that the lump in Mrs. Conaway's breast was not malignant and recommended that Mrs. Cona-

way be "recheck[ed] with mammogram in about one year...."

November 2, 1983—April 16, 1986: Mrs. Conaway visited Dr. Chambers on approximately thirty occasions for ailments unrelated to the lump in her breast.

May 13, 1986: Of her own accord, Mrs. Conaway had the radiologist perform a second mammogram. The results indicated the need for a sonogram, which was performed, and the results again did not indicate that the lump in Mrs. Conaway's breast was malignant. The radiologist subsequently forwarded to Dr. Chambers the results of the mammogram and sonogram.

June 16, 1986: Having received the radiological results, Dr. Chambers stated to Mrs. Conaway, "I saw the report, that everything is fine. Your breast is still fine." This is Dr. Chambers' last communication to Mrs. Conaway about her breast.

February 26, 1987—October 14, 1987: Mrs. Conaway visited Dr. Chambers at least six times for ailments unrelated to the lump in her breast. During this period, Mrs. Conaway experienced symptoms of breast cancer but did not advise Dr. Chambers.

January 19, 1988: Mrs. Conaway last visited Dr. Chambers for an ailment unrelated to the lump in her breast.

March 16, 1988: Mrs. Conaway sought the care of another physician, who diagnosed her breast cancer.

January 30, 1989: Mrs. Conaway and her husband filed suit against Dr. Chambers for negligent failure to diagnose her breast cancer.

In granting Dr. Chambers' motion for summary judgment, the trial court concluded that the two-year limitations period commenced on June 16, 1986, and that, because Mrs. Conaway filed her claim on January 30, 1989, more than two years later, her claim was untimely. The court of appeals reversed and remanded the case, holding that a "material fact issue exists as to whether Chambers or Christene Conaway by words or conduct terminated the treatment of her breast condition." 823 S.W.2d at 335. Based on these

facts, we must determine whether Dr. Chambers, in moving for summary judgment upon the affirmative defense of limitations, established as a matter of law that the statute of limitations barred the lawsuit against him. *Rowntree v. Hunsucker,* 833 S.W.2d 103, 104 (Tex.1992) (citing *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983)).

■ The applicable statute of limitations is found in Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1993), which provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . .

The period of limitations as set forth in this statute runs from any one of three events: (i) the date the breach or tort occurred; (ii) the date the treatment that is the subject of the claim is completed; or (iii) the date the hospitalization for which the claim is made is completed. *Id.* (citing *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987)). The controlling issue in this case is whether the summary judgment evidence reveals that any of these events occurred after January 30, 1987, the date two years before Mrs. Conaway commenced her action. If the evidence shows such an event occurred, then Dr. Chambers is not entitled to summary judgment.

■ During the physician-patient relationship, the physician has a duty to act as would a physician of reasonable and ordinary prudence under the same or similar circumstances. *See Hood v. Phillips,* 554 S.W.2d 160, 165 (Tex.1977); *Snow v. Bond,* 438 S.W.2d 549, 550–51 (Tex.1969). Accordingly, a physician's failure to so act constitutes a breach of that duty. The burden of proof is on the patient to establish that a breach has

occurred, *Hood,* 554 S.W.2d at 165, and, unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, the patient must tender expert testimony to meet the burden. *Id.* at 165–66; *see also Coan v. Winters,* 646 S.W.2d 655, 657 (Tex.App.—Fort Worth 1983, writ ref'd n.r.e.); *Rodriguez v. Reeves,* 730 S.W.2d 19, 21 (Tex.App.—Corpus Christi 1987, no writ).

■ In response to Dr. Chambers' motion for summary judgment, Mrs. Conaway filed the uncontroverted affidavit of Dr. Edward Spoll, a physician licensed to practice medicine in Pennsylvania of the same school of medicine as Dr. Chambers. Dr. Spoll's affidavit states that, following the receipt of the 1986 mammogram report, Dr. Chambers was negligent in "fail[ing] to perform any follow-up diagnostic tests. . . . Under the circumstances, mammograms and sonograms are not conclusive and further diagnostic tests, i.e.[,] biopsy, should have been performed by Dr. Chambers or he should have referred Christine Conaway to other physicians for such diagnostic tests." Dr. Spoll's affidavit further states that "a primary family doctor, such as Dr. George H. Chambers, was responsible for monitoring the health and medical needs of his patient, including not only addressing those specific complaints made by a patient but also caring for, monitoring and treating those conditions of which he had notice, i.e.[,] Christine Conaway's complaints of a lump in her left breast." If Dr. Spoll's opinions and conclusions are to be accepted, they tend to establish that Dr. Chambers was negligent in his care of Mrs. Conaway up to the last appointment between them on January 19, 1988, a date less than two years before Mrs. Conaway commenced her claim.[1] Consequently, when Mrs. Conaway filed her action on January 30, 1989, it was within two years of the purported "occurrence of the breach," and her claim was not barred by limitations.[2]

---

1. Justice Enoch's dissenting opinion would construe Dr. Spoll's uncontroverted affidavit strictly *against* the non-movant, contrary to long-established summary judgment practice. *See, e.g., Hudnall v. Tyler Bank & Trust Co.,* 458 S.W.2d 183, 185 (Tex.1970).

2. Justice Hecht's dissenting opinion argues that limitations will never run against a primary care physician under these facts. The truth is that the *cause of action never accrued* until the physician failed to perform the follow-up required by the standard of care within the time prescribed by

■ Although we dispose of this appeal by relying on the first element of section 10.01, we recognize that the lower courts looked to the second, which states that the limitations period begins to run "from the date the medical or health care treatment that is the subject of the claim" was completed. In his motion for summary judgment, Dr. Chambers contended, and the trial court agreed, that the last day of his alleged course of treatment of Mrs. Conaway's breast condition was more than two years before she brought suit. The court of appeals disagreed, holding that a material fact issue exists whether Dr. Chambers or Mrs. Conaway had terminated his treatment on that date. We, in turn, disagree with the court of appeals' reasoning because determining when treatment has concluded for purposes of section 10.01 simply amounts to deciding when a plaintiff's cause of action accrues, and the question of when a claim accrues is one of law and not fact. *Gaddis v. Smith,* 417 S.W.2d 577, 580–81 (Tex.1967).

We most recently visited this issue in *Hunsucker v. Rowntree,* where a physician obtained summary judgment based on his allegation that the suit was barred by section 10.01. The court of appeals in that case held that the grant of summary judgment was incorrect because a question of material fact existed, namely "whether Rowntree's treatment of Penelope Hunsucker continued for as long as she was taking the medication which he prescribed...." 815 S.W.2d 779, 782 (Tex.App.—Texarkana 1991), *rev'd,* 833 S.W.2d 103 (Tex.1992). Accordingly, the court of appeals reversed and remanded the case to determine the "factual" issue of when Ms. Hunsucker's treatment ended. We, in turn, reversed the court of appeals in *Rowntree* because the only question left for resolution was one of law rather than one of fact. 833 S.W.2d 103 (Tex.1992). In the instant case, the court of appeals committed the same error: it perceived a genuine issue of material fact where none existed. Just as in

*Rowntree,* whether treatment between Dr. Chambers and Mrs. Conaway was terminated for purposes of section 10.01 is a question of law appropriately decided on a motion for summary judgment. Here, however, because our disposition of the appeal relies on the first element, we need not determine as a matter of law for purposes of section 10.01 when Dr. Chambers terminated Mrs. Conaway's treatment.

We conclude that, because Dr. Chambers, in moving for summary judgment on the affirmative defense of limitations, failed to establish as a matter of law that the statute of limitations barred the suit against him, he is not entitled to summary judgment. We therefore remand the case for a trial on the merits of Mrs. Conaway's malpractice claim.

Concurring opinion by GONZALEZ, J.

Dissenting opinions by HECHT and ENOCH, JJ.

GONZALEZ, Justice, concurring.

I agree with the judgment of the Court. Summary judgment evidence establishes, through expert medical testimony, that the relevant standard of care requires the primary care physician to make inquiry and schedule follow-up care on women who complain about lumps in their breast. Dr. Spoll's uncontroverted affidavit creates a fact issue as to whether Dr. Chambers breached this duty. I write separately, however, to express my concern regarding the uncertainty in determining when the statute of limitations begins to run in this type of case. I encourage the legislature to express more clearly its intent as to when the limitations period begins to run on primary care physicians who, by failing to establish procedures for adequate follow-up care and treatment, have breached a duty as established within the relevant medical community.[1]

the standard of care. Limitations will still run in two years after the cause of action accrues.

1. This duty should not be read as imposing on a physician an obligation to conduct follow-up care and treatment on his or her patients for every conceivable medical condition that the physician

has treated. Unless the medical community's standard of reasonable care requires periodic follow-up examinations for a particular condition, there is no duty on the part of the physician to undertake such procedures.

In the case before us, two mammograms, one in 1983 and the other in 1986, indicated that the lump in Mrs. Conaway's breast was not cancerous. The last date on which Dr. Chambers saw Mrs. Conaway regarding the lump in her breast was June 16, 1986.[2] Accordingly, unless there was a duty to continue follow-up care, June 16, 1986, was the date the health care treatment for that condition was terminated and arguably, the limitations period began to run. Although Mrs. Conaway visited Dr. Chambers on numerous occasions between June of 1986 and January of 1988, these visits were for reasons wholly unrelated to the lump in her breast, *i.e.*, medication for a backache suffered as a result of an automobile accident, medication for a urinary tract infection, blood sugar testing, and treatment for high blood pressure.[3] These unrelated visits should not operate to extend the limitations period indefinitely. Nevertheless, the present limitations statute does not provide a means for establishing when the limitations period runs on this duty to continue follow-up care.

In enacting the Medical Liability and Insurance Improvement Act, Tex.Rev.Civ.Stat. Ann. art. 4590i (Vernon Supp.1993), the legislature adopted an absolute two-year statute of limitations. *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). In order to be timely, suit must be brought within two years of the event giving rise to liability, the commencement of which runs from one of three dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 (Tex.1992); *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex.1987). The third situation is not applicable under the facts of this case because there was no period of hospitalization. Thus, under the present statute, the limitations period began running from either the date of the occurrence of the breach or tort, or the date the health care treatment that is the subject of the claim is completed.

Today the Court opts for the former by concluding the summary judgment evidence "tend[s] to establish that Dr. Chambers was negligent in his care of Mrs. Conaway up to the last appointment between them on January 19, 1988. . . . Consequently, when Mrs. Conaway filed her action on January 30, 1989, it was within two years of the purported 'occurrence of the breach,' and her claim was not barred by limitations." 883 S.W.2d 158.

Classifying a failure to continue follow-up treatment as an "occurrence" for limitations purposes is problematic. Any such failure "occurs" the first time the doctor examines a patient and continues every day thereafter that the doctor fails to perform follow-up care. The Court cannot say, however, that the statute of limitations never begins to run in these circumstances because of the obvious clash with legislative intent. Instead, the Court decides that each time the patient revisits the doctor for any reason, there is a new "occurrence" of a failure to diagnose if there was a continuing duty to monitor the condition in question. Under this reasoning, establishing the two-year statute of limitations from the "occurrence of the breach" is now arguably an exercise in futility, because all an individual need do to extend the limitations period is to make another appointment.

Equally troubling, however, is a standard which allows for the limitations periods to begin running from the date the health care treatment that is the subject of the claim is completed. The applicability of this provision presupposes that there has been a continuing course of treatment for a condition and that the only readily ascertainable date of the injury is the last day of treatment. *Rowntree v. Hunsucker*, 833 S.W.2d 103, 105 (Tex.1992).[4] Under the present facts, no

---

2. After reviewing the radiological reports, Dr. Chambers told Mrs. Conaway that her breast was "alright."

3. Although she had been experiencing symptoms of breast cancer, Mrs. Conaway never advised Dr. Chambers of these symptoms.

4. "The provision . . . that permits the limitations period to run 'from the date the medical or health care treatment that is the subject of the claim . . . is completed' contemplates a situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last

continuing course of treatment for Mrs. Conaway's breast condition had been established. In fact, the very "subject of the claim" is the *failure to continue* a course of treatment.

The present limitations statute is inadequate to readily ascertain when the limitations period begins to run on claims involving the failure to render follow-up care. Unless the legislature fixes this problem, the consequence of this uncertainty is that physicians may be indefinitely subjected to liability or may waste an inordinate amount of time and resources defending stale claims, or both.

HECHT, Justice, dissenting.

When Mrs. Conaway asked Dr. Chambers whether the lump in her breast was cancerous, he diagnosed, correctly, that it was not. She continued to see him for entirely unrelated problems. She never mentioned another problem with her breast, and he never inquired. Much later, another lump was cancerous. Mrs. Conaway claims that as long as she continued to see Dr. Chambers, regardless of the reason, he should have asked her about lumps in her breasts and checked her for cancer. The Court agrees. The rule the Court announces today is that if a physician correctly diagnoses a patient not to have a disease or condition, but continues to treat the patient for entirely unrelated matters without checking for the disease or condition the patient has never had, an action for failure to diagnose the disease or condition *is never barred by limitations*. In other words, if a patient can have a disease but doesn't, and continues to see the same physician, limitations never bars a claim for failure to diagnose the disease. I dissent.

According to the Medical Liability and Insurance Improvement Act, limitations begins to run on a health care liability claim either "from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1993). With respect to the second of these dates, the date treatment ends, we held last year in *Rown-*

*tree v. Hunsucker*, 833 S.W.2d 103 (Tex. 1992), that when the facts regarding the nature of medical treatment are undisputed, as they were in that case and are in this one, the question of when treatment was completed is one for the court to answer as a matter of law. There we held, as a matter of law, that a single instance of prescription renewal, at least when there is no claim that the medication caused the harm, does not by itself "demonstrate sufficient involvement by the physician to constitute a continuing course of treatment." *Id.* at 108.

The Court in the present case acknowledges *Rowntree* but attempts to circumvent it by focusing on the first date specified in section 10.01, the occurrence of the breach or tort. The Court concludes that Mrs. Conaway has raised a question of fact whether Dr. Chambers was negligent in his care of her because he failed to treat her for possible breast cancer each time she visited him for "ailments unrelated to the lump in her breast." Mrs. Conaway does not allege that the purpose of any of these visits was to seek further treatment of the lump or possible cancer. Since some of those visits occurred within two years of the date Mrs. Conaway sued Dr. Chambers, the Court holds that her action cannot be said to be barred by limitations as a matter of law. By basing its analysis on the date of breach or tort, the Court claims to have avoided having to determine whether and when Dr. Chambers ceased to treat Mrs. Conaway for possible breast cancer.

Logic defeats this claim. If Dr. Chambers was negligent in failing to treat Mrs. Conaway for possible breast cancer each time she saw him, it follows that his treatment of her for the lump and possible breast cancer was continuing. If his treatment of that potential condition ceased, then he could not be negligent for failing to treat that condition simply because he continued to treat Mrs. Conaway for other conditions. It is logically impossible for a physician to be negligent in caring for a condition after his treatment of that condition ceases.

day of treatment. Such a situation often arises in suits alleging misdiagnosis or mistreatment."

*Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987).

Thus, the Court is simply incorrect when it concludes that it need not determine when Dr. Chambers' treatment of Mrs. Conaway for possible breast cancer ceased. In fact, that determination is inescapable. The logical consequence of the Court's holding is that Dr. Chambers' treatment of Mrs. Conaway's breast condition was never completed. There are, in my view, two difficulties with this result.

The first is that it is directly contrary to one of the principal authorities on which we relied in our unanimous opinion in *Rowntree* issued just last year: *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 573 N.Y.S.2d 434, 577 N.E.2d 1026 (1991). That case is so strikingly similar to the present case, I quote from it at length:

> Plaintiff first began seeing Dr. Henriques in 1974 for infertility problems, which were determined to be secondary to endometriosis. The doctor treated plaintiff for that condition over a period of years, culminating in surgery in April 1982. During an office visit in July 1979, plaintiff brought to the doctor's attention a lump in her right breast. After examining the breast, he allegedly told plaintiff that the lump was attributable to noncancerous fibrocystic disease and that "we will have to keep an eye on it." In addition, lumps in both breasts were noted during an examination of plaintiff conducted by an unspecified person upon plaintiff's admission to the hospital for the April 1982 surgery. No further evaluation was performed at that time.

> After the surgery, plaintiff saw the doctor three times, the last time in September 1983, for postoperative care and adjustment of estrogen replacement medication. The doctor phoned in renewals of plaintiff's prescriptions in 1984 and in June 1985. In December 1985, plaintiff scheduled an appointment with the doctor because she had detected enlargement of the mass in her right breast. The doctor examined defendant in January 1986 and immediately referred her to an oncologist, who diagnosed breast cancer. This action was commenced in December 1987.

A medical malpractice claim generally accrues on the date of the alleged wrongful act or omission and is governed by a 2½–year Statute of Limitations (*Davis v. City of New York*, 38 N.Y.2d 257, 259, 379 N.Y.S.2d 721, 342 N.E.2d 516; CPLR 214–a). Under the continuous treatment doctrine exception, however, the 2½–year period does not begin to run until the end of the course of treatment " 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint' " (*McDermott v. Torre, supra*, 56 N.Y.2d [399] *at* 405, 452 N.Y.S.2d 351, 437 N.E.2d 1108, quoting *Borgia v. City of New York, supra*, 12 N.Y.2d [151] *at* 155, 237 N.Y.S.2d 319, 187 N.E.2d 777). The purpose of the doctrine is to "maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure" (*McDermott v. Torre, supra*, 56 N.Y.2d *at* 408, 452 N.Y.S.2d 351, 437 N.E.2d 1108). The doctrine rests on the premise that it is in the patient's best interest that an ongoing course of treatment be continued, rather than interrupted by a lawsuit, because "the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so." (*Id.*)

Thus, essential to the application of the doctrine is that there has been a course of treatment established with respect to the condition that gives rise to the lawsuit. We have held that neither the mere "continuing relation between physician and patient" nor "the continuing nature of a diagnosis" is sufficient to satisfy the requirements of the doctrine (*id., at* 405, 406, 452 N.Y.S.2d 351, 437 N.E.2d 1108). In the absence of continuing efforts by a doctor to treat a particular condition, none of the policy reasons underlying the continuous treatment doctrine justify the patient's delay in bringing suit.

Here, plaintiff has failed to allege facts which would support a finding that a course of treatment was established in connection with her breast condition. The only course of treatment alleged was related to a separate medical condition, endom-

etriosis. Under the relevant statute and case law, this is not sufficient. CPLR 214–a explicitly requires that, for the toll to apply, the continuous treatment must be "for the same illness, injury or condition which gave rise to the * * * act, omission or failure" complained of (see also, *McDermott v. Torre, supra*, 56 N.Y.2d at 405, 452 N.Y.S.2d 351, 437 N.E.2d 1108; *Borgia v. City of New York, supra*, 12 N.Y.2d at 155, 237 N.Y.S.2d 319, 187 N.E.2d 777 [the course of treatment must be "related to the same original condition or complaint"] ). No connection between plaintiff's breast condition and the course of treatment for endometriosis has been alleged.

Nor do the isolated breast examinations, only one of which is alleged to have been performed by defendant doctor during the relevant period, establish a course of continuous treatment with respect to plaintiff's breast condition (*see, Davis v. City of New York*, 38 N.Y.2d 257, 379 N.Y.S.2d 721, 342 N.E.2d 516, *supra* ). In *Davis*, we held that two diagnostic examinations, conducted a year apart, were "discrete and complete" and did not constitute continuous treatment (38 N.Y.2d, *at* 260, 379 N.Y.S.2d 721, 342 N.E.2d 516). The examinations in this case were equally "discrete and complete" and were separated by an even greater period of time.

*Id.* 573 N.Y.S.2d at 435–36, 577 N.E.2d at 1027–1028. Our reference to *Nykorchuck* in *Rowntree* was not obscure. *Rowntree*, 833 S.W.2d at 106. We recited the facts and quoted from the opinion at some length. The Court offers no justification for abandoning the rationale and authority of *Rowntree* in this case.

The second difficulty with the Court's result is that it is impractical and inconsistent with the philosophy underlying the statute of limitations. Again, as the New York Court of Appeals explained:

A holding that the continuous treatment doctrine is applicable to these facts would fundamentally extend and alter the doctrine. The gravamen of plaintiff's claim is not that the doctor performed certain negligent acts or omissions during a course of treatment for her breast condition, but rather that the doctor was negligent in failing to establish a course of treatment at all. While the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment.

*Id.* 573 N.Y.S.2d at 436–37, 577 N.E.2d at 1028–1029. The same can be said of this case.

In essence, the Court holds that once a physician examines a lump in a patient's breast, he may be obliged to treat her for that lump whenever she sees him again, no matter what the purpose of her visit. In such a case, limitations never runs.[1] I would hold, following *Rowntree* and *Nykorchuck*, that under these facts Dr. Chambers' treatment of Mrs. Conaway's breast condition ceased the last time she mentioned it to him. Since that was more than two years prior to the date Mrs. Conaway filed suit, I would hold that her suit is barred by limitations. Accordingly, I dissent.

ENOCH, Justice, dissenting.

I respectfully dissent. As a matter of law, Dr. Spoll's controverting affidavit is insufficient to establish a duty that Dr. Chambers breached within two years prior to the filing

---

1. According to the Court, limitations runs like it always does, but the cause of action accrues over and over. *Ante* at 158 n. 2. The Court's attempted distinction is all semantics. It does not change the fact that if a patient is correctly diagnosed not to have a disease or condition and continues to see the physician for unrelated matters, the physician may be liable for not diagnosing the disease or condition if the patient ever does have it, even if the patient never seeks treatment for it again. If a physician is always responsible for diagnosing recurrence of past complaints, even if the patient continues to seek treatment only for completely unrelated matters, why should the physician not also be liable for failing to diagnose problems which *might* exist, even if the patient does not seek treatment for them? In other words, under the Court's view, why shouldn't a physician who is asked to treat a sprained foot also be responsible, in every situation, for checking the patient's cholesterol, and liable for failing to prevent the patient's eventual heart attack.

of this lawsuit. Accordingly, I would reverse the court of appeals and affirm the trial court's summary judgment for Dr. Chambers.

I agree with Justice Gonzalez's concurrence in recognizing that 1) if a condition is one for which the medical community has established procedures for follow-up medical care, 2) the physician is one to whom the patient looks for general, primary medical care, and 3) the physician has actual notice of the existence of that condition in the patient, then a duty may arise for the physician to continue to inquire about that condition on subsequent checkups, even when the purpose of the checkup is for unrelated care. 883 S.W.2d 156, 159, n. 1 (Gonzalez, J., concurring). However, Dr. Spoll's affidavit does not demonstrate that the medical community has established procedures requiring follow-up medical care under circumstances such as in this case. *See White v. Wah,* 789 S.W.2d 312, 316 (Tex.App.—Houston [1st Dist] 1990, no writ) (affidavit must state the standard of care that would be used by a reasonably prudent physician under the same or similar circumstances); *see also McCord v. Avery,* 708 S.W.2d 954, 956 (Tex.App.—Fort Worth 1986, no writ); *Wheeler v. Aldama–Luebbert,* 707 S.W.2d 213, 217 (Tex.App.—Houston [1st Dist.] 1986, no writ).

Because failure to establish a course of treatment is not a course of treatment in and of itself, the limitations period would begin on June 16, 1986, when Dr. Chambers examined the lump in Mrs. Conaway's breast and allegedly negligently failed to diagnose the breast cancer, not January 19, 1988, the date of the last appointment between them. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 105–06 (Tex.1992); *Nykorchuck v. Henriques,* 78 N.Y.2d 255, 573 N.Y.S.2d 434, 577

1. Because I would hold that Dr. Spoll's affidavit does not establish a duty for follow-up care on the part of Dr. Chambers, it would be neither necessary to reach the vexing question of when the statute of limitations for breach of such a duty would accrue against Dr. Chambers, nor necessary to reconcile this case with *Rowntree v. Hunsucker.* See 883 S.W.2d 159 (Hecht, J., dissenting); *Rowntree v. Hunsucker,* at 105–06; *Nykorchuck v. Henriques,* at 1029.

N.E.2d 1026, 1029 (N.Y.1991). I therefore dissent.[1]

In response to my dissent, the Court cites *Hudnall v. Tyler Bank & Trust Co.,* 458 S.W.2d 183, 185 (Tex.1970) asserting that I err in construing Dr. Spoll's affidavit *strictly* against Conaway. 883 S.W.2d at 158–159. Dr. Spoll's affidavit is silent on any recognized duty of care within the medical community. Consequently, there is nothing to be construed either strictly or broadly.