**Bessie WINSTON and James Winston, Appellants**

v.

**William H. PETEREK, M.D., Appellee.**

**No. 14–03–00624–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 8, 2004.

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–171.098 (Vernon 1997 & Supp. 2004).

2. *See* 9 U.S.C. § 1–307 (2003).

Barry M. Barnes, Houston, for appellants.

Wade B. Williams, George W. Vie, III, Galveston, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

On its own motion, the court withdraws its memorandum opinion of March 16, 2004 and substitutes the following majority and dissenting opinions.

Appellants, Bessie Winston and James Winston ("Winstons") appeal the grant of summary judgment in favor of Appellee, William H. Peterek, M.D. ("Dr. Peterek"). The Winstons brought their medical malpractice suit after Mrs. Winston suffered from a ruptured cerebral aneurysm and subarachnoid hemorrhages. Dr. Peterek filed his motion for partial summary judgment arguing the Winstons' claims were barred by limitations. We affirm.

The Winstons originally brought suit against Dr. Peterek and the Gulf Coast Medical Group Family Practice. After giving notice to Dr. Peterek of their claim pursuant to Article 4590i, Section 4.01 of the Revised Civil Statutes[1] in October, 2000, the Winstons filed their suit on January 2, 2002. After the trial court granted Dr. Peterek's motion for partial summary judgment, the claims against Dr. Peterek were severed from the claims against the medical group; thus, a final judgment was rendered in favor of Dr. Peterek.

Dr. Peterek began treating Winston for hypertension on October 13, 1993. Dr. Peterek initially prescribed Procardia XL on October 13, 1993. He also prescribed Anaprox on or about June 27, 1994. Winston's last office visit with Dr. Peterek was on April 3, 1998. Subsequently, Dr. Peterek's office made calls to refill the prescription for Procardia on February 9, 1999, and October 5, 1999. A call was also made on November 19, 1998, to refill a prescription for Anaprox. The record is silent, and the parties do not assert, that any future office visits were scheduled. Winston sustained her injuries on November 5, 1999.

To prevail on a motion for summary judgment, a defendant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *Guest v. Cochran,* 993 S.W.2d 397, 401 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In

---

1. This provision was formerly found at Tex. Rev.Civ. Stats. Ann. Art. 4590i, § 4.01(c). Medical Liability and Insurance Improvement Act of Texas, 65th Leg., R.S., ch. 817, § 4.01(c), 1977 Tex. Gen. Laws.2039, 2047, *repealed by* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws. 847, 884. The provision may now be found at Section 74.051(c) of the Civil Practice and Remedies Code.

conducting our review of the summary judgment, we take as true all evidence favorable to the nonmovant, and make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). A defendant, as movant, is entitled to summary judgment if it either disproves at least one essential element of each of the plaintiff's causes of action or establishes all the elements of an affirmative defense. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). By moving for summary judgment, Dr. Peterek has the burden to show as a matter of law that the Winstons' suit is barred by limitations. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983) (per curiam).

 Texas law imposes a two-year statute of limitation on health care claims. TEX. CIV. PRAC. & REM.CODE ANN. § 74.251 (Vernon Supp.2004).[2] The limitations period is measured from one of three dates: (1) occurrence of the breach or tort, (2) date that the relevant course of treatment was completed, or (3) last date of the relevant hospitalization. *Id.; Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987). A plaintiff is not permitted to choose the measurement most favorable to its case. *Shah v. Moss,* 67 S.W.3d 836, 841 (Tex. 2001). A reviewing court must first determine whether the date of the alleged tort is ascertainable. If the date is not ascertainable, then the court must employ a course of treatment analysis in order to determine the last day of treatment. *Kimball,* 741 S.W.2d at 372. Naturally, the plaintiff must establish a course of treatment under this analysis. *Shah,* 67 S.W.3d at 841. However, if the date of the alleged tort or breach is known, the limitations run from that date. *Id.* at 843. The ascertainable date controls irrespective of the plaintiff's attempt to establish a course of treatment. *Id.* at 843–44.

The Winston's alleged in their petition that "Peterek continued to misdiagnose Plaintiff's condition over the phone .... [and] continued to prescribe hypertension and pain medication despite the medication's apparent ineffectiveness." More specifically, the Winstons alleged in their petition that Dr. Peterek was negligent in: (1) In failing to properly perform medical treatment; (2) failing to examine upon presentment of symptoms; (3) prescribing medication without a physical examination; (4) failing to use proper diagnostic procedures in connection with Winston's symptoms; and (5) failing to recognize and/or acknowledge the symptoms resulting from his treatment. The Winstons do not allege that the prescribed medications were the cause of her injury; rather, the Winstons' complaints arise out of Dr. Peterek's failure to correctly discover, treat, or prevent Mrs. Winston's subsequent injuries through appropriate follow-up care.

 Allegations of misdiagnosis necessarily require a reviewing court to use the date of the last visit with the physician in a limitations analysis. *See Rowntree v. Hunsucker,* 833 S.W.2d 103, 108 (Tex. 1992). Likewise, a physician's "negligent failure to conduct follow-up procedures" occurs only "in connection with the [last] examination." *Bala v. Maxwell,* 909 S.W.2d 889, 892 (Tex.1995). The theory in such cases is that when a physician negligently fails to provide weekly or monthly follow-up treatment, the breach of duty imposed by the standard of care occurs on the last date the physician actually saw the patient. *Shah,* 67 S.W.3d at 844.

**2.** Effective September 1, 2003, the provisions found at Article 4590i of the Revised Civil Statutes are now found in Chapter 74 of the Civil Practice and Remedies Code. Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws. 847, 864.

■ Appellants argue that Mrs. Winston was injured by a "course of treatment." However, the gist of their complaint is not that the medications prescribed by Dr. Peterek caused the injury, but that his lack of follow-up care caused the injury. As the Texas Supreme Court observed, "[w]hile the failure to treat a condition may well be negligent, we cannot accept the self-contradictory proposition that the failure to establish a course of treatment is a course of treatment." *Rowntree*, 833 S.W.2d at 105–06 (quoting from *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 573 N.Y.S.2d 434, 437, 577 N.E.2d 1026, 1029 (1991)).

■ Appellants also seem to contend that a "course of treatment" is supported here by the fact that Mrs. Winston obtained additional refills of her prescription medication by calling Dr. Peterek well after her last visit. However, the Texas Supreme Court has not supported a rule that would extend the statutory limitations period until all authorized prescription refills are obtained. *Rowntree*, 833 S.W.2d at 107 (finding such a rule "unworkable").[3]

In order to use a course-of-treatment analysis in connection with prescription drugs, the alleged drug treatment must be the direct cause of the injury. *See id.* at 105. Here, the Winstons' claims center on Dr. Peterek's negligent follow-up care. For example, the Winstons' expert stated in his affidavit:

> Mrs. Winston's specific case of hypertension required follow-up medical services throughout the time she was being treated for hypertension with medication. Mrs. Winston required medical examinations and monitoring to verify the effectiveness of the medication and to make medication or other adjustments if necessary to reduce her blood pressure below hypertension levels.

Absent from the record is an allegation that it was the drug that caused the injury. Based upon the Winstons' allegations, any breach would have occurred during the last visit on April 3, 1998, which is an ascertainable date. Having established an ascertainable date, we do not conduct a course-of-treatment analysis. *Shah*, 67 S.W.3d at 843–44.

---

**3.** The Winstons argue that we should confine our analysis to those cases involving prescription drugs. An analysis of the facts of *Gross v. Kahanek*, 3 S.W.3d 518 (Tex.1999) (per curiam) and *Rowntree v. Hunsucker*, 833 S.W.2d 103 (Tex.1992) instructs us as to why we are not required to consider additional prescription refills. We acknowledge that in cases where a prescribed drug is the cause of an injury that the limitations would run from the last drug treatment. *Gross*, 3 S.W.3d at 521; *Rowntree*, 833 S.W.2d at 105. However, the present case can be both likened and distinguished with *Gross* and *Rowntree*.

The crucial inquiry is whether the plaintiff alleges injuries directly caused by the prescribed drug. The plaintiff in *Gross* was prescribed a drug, Tegretol, and the claim specifically arose out of the use of the drug. 3 S.W.3d at 520. The plaintiff's alleged multiple acts of negligence, including a failure to monitor and maintain an appropriate level of Tegretol. *Id.* The record also contained evidence that Tegretol poisoning contributed to the complainant's death. *Id.* Conversely, the plaintiff in *Rowntree* was being treated for hypertension and subsequently suffered a stroke. 833 S.W.2d at 104. The plaintiff attempted to extend the period of limitations by arguing that the course of treatment necessarily included the time period that plaintiff was taking prescription drugs. *Id.* at 105. Notwithstanding subsequent prescription refills and appointments for unrelated conditions, the supreme court used the date of the last hypertension-related visit in upholding summary judgment on limitations. *Id.* at 108–09. The supreme court found it determinative that the plaintiff was not complaining that the drug caused the harm; the plaintiff even conceded that the drug was appropriately prescribed. *Id.* at 105, 108.

Accordingly, the trial court did not err in granting summary judgment. The Winstons filed their lawsuit over three years from the date of last examination. Thus, they are barred by limitations. We affirm the judgment of the trial court.

LESLIE BROCK YATES, Justice, dissenting.

I respectfully disagree with the majority's conclusion that the claims of the Winstons are barred by limitations. As the majority noted, Texas law imposes a two-year statute of limitations on health-care claims. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983) (per curiam). Importantly, if the date of the alleged tort or breach is ascertainable, the limitations period runs from that date, and the ascertainable date controls regardless of whether there was an established course of treatment. *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex.2001). In his motion for summary judgment, Dr. Peterek argued he was entitled to relief on the sole ground that April 3, 1998, was the ascertainable date of breach because it was the day Bessie Winston last visited his office. Because he received notice of the Winstons' claims on October 20, 2000—more than two years after April 3, 1998—Dr. Peterek contended the claims of the Winstons were barred by the statute of limitations. In order to prevail, Dr. Peterek had the burden to prove that the ascertainable date of breach was prior to October 20, 1998. *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983) (per curiam). I believe Dr. Peterek failed to meet this burden.

In response to Dr. Peterek's motion for summary judgment, the Winstons attached an affidavit from their expert, Dr. Arthur Hadley, who stated in relevant part as follows:

Additionally, *on April 13, 1998, Mrs. Winston complained of nausea, vomit-ing and headache* .... Dr. Peterek renewed Mrs. Winston's Procardia prescription three times after his last examination. The first was on August 31, 1998, the second on February 9, 1999 and the third was on October 5, 1999.... According to Mrs. Winston's daughters *Mrs. Winston complained to Dr. Peterek of other headaches* that were located in the area of her temple to the back of her head with pain radiating down her neck to her shoulders. The headaches were described as the worst she had ever experienced. *Even after those warnings Dr. Peterek's treatment of Mrs. Winston's hypertension continued to be the prescriptive medicine Procardia.*

(emphasis added). The expert further opined that nausea, vomiting, and headaches are symptoms of subarachnoid hemorrhaging. Dr. Hadley further stated that Dr. Peterek should have determined the etiology of those symptoms as is dictated by the standard of care and practice for the treatment and management of hypertension.

The affidavit of Dr. Hadley indicates that on April 13, 1998, Mrs. Winston complained to Dr. Peterek of symptoms that could be signs of subarachnoid hemorrhaging. The testimony also suggests that after April 13, 1998, Mrs. Winston complained of *other* headaches, and despite the complaints, Dr. Peterek continued to prescribe Procardia. The affidavit does not provide a date for the additional conversation or conversations between Mrs. Winston and Dr. Peterek. From the context of the paragraph, the conversations appear to have taken place sometime between April 14, 1998, and October 5, 1999. According to the record before us, Dr. Peterek did not make any objections to the affidavit nor did he offer any evidence to provide a time-line for the purported con-

versations. Dr. Peterek responded that his last office visit with Mrs. Winston was on April 3, 1998.

Dr. Peterek and the majority rely on *Shah, Bala v. Maxwell,* 909 S.W.2d 889 (Tex.1995), and *Rowntree v. Hunsucker,* 833 S.W.2d 103 (Tex.1992), to conclude that the date of Mrs. Winston's last office visit is the ascertainable date of breach. I do not find that the reasoning of those cases necessitates the majority's conclusion. In concluding a patient's negligent follow-up treatment claim was barred by the statute of limitations, the Texas Supreme Court found in *Shah* "that the dates on which the physician's alleged negligence took place were readily ascertainable because the physician did not perform the necessary exams during specific office visits." 67 S.W.3d at 843–45. The court found that the last date the physician could have breached his alleged duty to provide follow-up care was the last day he actually saw the patient because "the last time [he] could have ordered additional weekly or monthly office visits was during the last recheck visit...." *Id.* at 844–45.[1] In dismissing another patient's claim that her physician breached a duty to perform proper examinations that would have detected occluded arteries, the court determined in *Rowntree* the statute of limitations began to run "from the date of the alleged wrongful act." 833 S.W.2d at 108. The court found that the date of the alleged wrongful act was ascertainable from the facts of the case because the physician "could have breached this duty only on those occasions when he had opportunity to perform such examinations." *Id.* The court noted that, although the patient had refilled her hypertension medication at the

pharmacy within the statutory period, the physician had provided no regular examinations or "other services" during that time. *Id.* In *Bala,* the court held the statute of limitations barred the patient's claim because the last time the patient had seen the physician prior to the visit that led to her diagnosis of breast cancer was more than two years prior to the patient's filing of her lawsuit. 909 S.W.2d at 891–92. Again, the court held that the physician could only have been negligent when he had an opportunity to conduct follow-up treatment. *Id.* at 892.

These cases stand for the proposition that an ascertainable date of breach in a negligent follow-up treatment case is the date on which the physician could have conducted follow-up procedures, or more precisely, the last date of treatment. In the aforementioned-cases and likely in most cases, this date is the date of the patient's last office visit. However, to find that a physician can treat a patient only in person is to overlook the undeniable fact that physicians can and do treat patients in many ways, using a variety of mediums.

In this case, the Winstons alleged a physician-patient relationship existed between Dr. Peterek and Mrs. Winston, and sued Dr. Peterek, claiming that he failed to, among other things, properly perform necessary medical treatment, examine Mrs. Winston upon presentment of her symptoms, and conduct proper diagnostic procedures in connection with those symptoms. The Winstons' expert opined that Dr. Peterek had a duty to provide careful follow-up treatment when Mrs. Winston made additional complaints of headaches, and that the standard of care dictated further

---

1. The dissent in *Shah* disagreed with the majority's finding of an ascertainable date of breach in a negligent follow-up treatment claim. 67 S.W.3d at 848 (O'Neill, J., dissenting). Justice O'Neill pointed out that finding an ascertainable date of breach in a follow-up treatment case led to the anomalous result that the limitations period began to run on the patient's claim before he suffered an injury. *Id.* In this case, the result is the same.

examination of her symptoms. We must take this evidence as true. *See Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). Applying the duty the alleged standard of care imposes, I would conclude that the statute of limitations began to run on the date of the last alleged wrongful act—the last day that Dr. Peterek treated Mrs. Winston and could have provided follow-up treatment. The Winstons' expert appears to allege that Mrs. Winston discussed problems associated with her hypertension with Dr. Peterek after April 13, 1998, and possibly during the statutory period. There is some evidence that Mrs. Winston discussed her complaints of headaches with Dr. Peterek or his staff after her last office visit, and that Dr. Peterek may have failed to establish appropriate follow-up treatment or order additional office visits at that time. Viewing the summary-judgment evidence in the light most favorable to the Winstons, Dr. Peterek failed to establish under the facts of this case that Mrs. Winston's last office visit was the last date he had the opportunity to provide follow-up treatment for her or that her last office visit was the last day of treatment.

I conclude that, because Dr. Peterek, in moving for summary judgment on the affirmative defense of limitations, failed to establish as a mater of law that the statute of limitations barred the suit against him, he is not entitled to summary judgment. For these reasons, I dissent.