

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00696-CV

L. Prasad M. **VEMULAPALLI**, M.D., and Cardiovascular
Associates of San Antonio, P.A.,
Appellants

v.

Charles **MOORE**, Individually and as Representative of
The Estate of Cameron Moore, Deceased
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-18998
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: August 19, 2020

REVERSED and RENDERED

L. Prasad M. Vemulapalli, M.D., and Cardiovascular Associates of San Antonio, P.A. ("CASA") appeal the trial court's order denying their summary judgment motion and assert the healthcare liability claims brought by Charles Moore, Individually and as Representative of the Estate of Cameron Moore ("Moore"), are barred by the statute of limitations. Because we conclude the limitations period began to run on the date of the last doctor visit, Moore's claims are barred

by limitations. Therefore, we reverse the trial court's order denying summary judgment and render a take nothing judgment in favor of appellants.

## BACKGROUND

The following facts are undisputed. Cameron Moore was a 24 year old professional basketball player. On May 28, 2015, Cameron suffered a sudden cardiac arrest and collapsed but was resuscitated after sustained efforts. Cameron was hospitalized from May 28, 2015 to June 13, 2015 when he was discharged. During his hospitalization, Dr. Vemulapalli was Cameron's consulting general cardiologist. The hospital records show that a transthoracic echocardiogram and EEG were conducted for diagnostic purposes, a cardiac catheterization procedure was performed on the left ventricle of Cameron's heart, and medications were started, with a follow-up EEG to be conducted in three months. Upon his discharge from the hospital, Cameron was advised not to return to playing professional basketball due to his heart condition.

Cameron sought a subsequent opinion and treatment from Dr. Vemulapalli. Cameron had appointments with Dr. Vemulapalli in his office at CASA on June 22, 2015, September 21, 2015, December 3, 2015, June 2, 2016, and for the last time on July 18, 2016 when Dr. Vemulapalli cleared Cameron to play basketball. Dr. Vemulapalli's progress notes, submitted as summary judgment evidence, reflect that at the June 22, 2015 appointment he diagnosed Cameron's primary condition as "congestive heart failure" and continued treating Cameron with prescription medications with orders for a follow-up appointment in three months for another echocardiogram test. The progress notes for September 21, 2015 show Cameron was continued on the medications and instructed to obtain a new echocardiogram, which he did the next day. The December 3, 2015 notes state that Cameron's last echocardiogram showed normal left ventricular function; his treatment through medications was continued, with a six-month follow up appointment ordered. Dr. Vemulapalli's notes from the six-month follow-up appointment on June 2, 2016 show he

continued Cameron's treatment for congestive heart failure with medication refills and ordered Cameron to return in three months for a follow-up appointment and a new echocardiogram. Instead, Cameron returned the next month on July 18, 2016 for the echocardiogram. Dr. Vemulapalli's notes from July 18, 2016 state Cameron's echocardiogram results showed normal left ventricular function and further state, "Patient is cleared to play professional basketball from Cardiac point of view." A clearance form signed by Dr. Vemulapalli is also in the records. The progress notes also reflect that Cameron was given refills and ordered to continue taking the medications and monitoring his blood pressure, and to return for a six-month follow-up appointment. The next day, July 19, 2016, Dr. Vemulapalli prepared and signed his report on the results of Cameron's most recent echocardiogram.

Cameron subsequently joined a new professional basketball team in Macedonia. During his first practice with the team on October 4, 2016, Cameron collapsed on the court and died from a sudden cardiac arrest.

On October 2, 2018, Charles Moore, Cameron's father, filed a healthcare liability suit against Dr. Vemulapalli and CASA asserting claims for negligence and gross negligence based on Dr. Vemulapalli's care and treatment of Cameron's heart condition. Moore alleged that Dr. Vemulapalli breached the applicable standard of care by: (1) failing to properly assess Cameron's symptoms; (2) failing to properly treat Cameron's conditions; (3) failing to properly and adequately recognize the extent of Cameron's cardiovascular irregularity; (4) failing to advise Cameron that continuing physical activity would be detrimental to his well-being and instead advising him to the contrary without the proper medical evidence to support such advice; (5) clearing Cameron to return to play professional basketball despite medical evidence indicating such activity would likely result in Cameron's death or serious injury; and (6) failing to protect Cameron from preventable injury and death. Moore later filed an amended petition adding

negligence allegations based on Dr. Vemulapalli's failure to recognize the echocardiogram results were an inadequate basis for clearance, the need for additional testing prior to clearance, the need to refer Cameron to a specialist who could perform additional testing, the need for Cameron to have access to a defibrillator if he were to resume playing basketball, and the need to retract clearance for Cameron to return to basketball.

With respect to CASA, Moore alleged that Dr. Vemulapalli was acting within the course and scope of his employment with CASA during his care and treatment of Cameron and that CASA breached its duty to hire, supervise, train, and retain competent agents and employees. Moore alleged that CASA was both vicariously liable and directly liable for Dr. Vemulapalli's negligence because he is a vice principal of the professional association.

Dr. Vemulapalli and CASA filed a motion for traditional summary judgment asserting Moore's healthcare liability claims are barred by the two year statute of limitations because the claims accrued on July 18, 2016, the date of Cameron's last office visit with Dr. Vemulapalli. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). Moore countered that the date of accrual for the claims was the date of Cameron's death, October 4, 2016, and therefore his lawsuit filed on October 2, 2018 was timely. The summary judgment evidence in support of the limitations defense consisted of Dr. Vemulapalli's affidavit stating the last date he treated Cameron was July 18, 2016 and including a copy of his progress notes for that day. Moore's summary judgment evidence in opposition consisted of Cameron's medical records from his hospitalization and all the progress notes from his treatment by Dr. Vemulapalli, and an affidavit from Dr. Shane Bailey, a board certified cardiac electrophysiologist. Dr. Bailey stated Cameron did not have congestive heart failure but instead suffered from a high-risk cardiac arrhythmia, which is an electrophysiological problem with the heart that can cause a dangerously fast heart rhythm, i.e., ventricular fibrillation, and result in cardiac arrest; the condition is known as "sudden cardiac death" ("SCD"). There is

no cure, but the standard of care consists of treatment protocols to significantly mitigate the risk of death. Primarily, Cameron required an implantable cardioverter defibrillator ("ICD") which continuously monitors the heart's rhythm and "when necessary" issues a jolt of electricity to restore the heart's normal rhythm and prevent sudden cardiac death.

After a hearing, the trial court denied summary judgment, ruling that Moore's lawsuit was timely filed because the accrual date was Cameron's October 4, 2016 date of death under a continuing course of treatment analysis. Dr. Vemulapalli and CASA moved for a permissive interlocutory appeal. After a short hearing, the trial court authorized the permissive appeal, finding that its denial of summary judgment involved a controlling question of law on which there are substantial grounds for difference of opinion, to wit: whether the accrual date of Moore's health care liability claims is July 18, 2016 based on the date of Cameron's last office visit and clearance by Dr. Vemulapalli, or October 4, 2016 based on the date of Cameron's death under a continuing course of treatment analysis. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d). This court subsequently granted the petition for permissive interlocutory appeal filed by Dr. Vemulapalli and CASA. *See id*. § 51.014(f).

## DISCUSSION

The sole issue before us is whether Moore's health care liability claims accrued on the date of Cameron's last office visit with Dr. Vemulapalli or on the date of Cameron's death. Section 74.251(a) provides that a plaintiff's health care liability claim must be filed within two years from "the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a). Thus, the statute of limitations will begin to run from one of three possible dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment on which the claim is based was completed; or (3) the date the hospitalization on which

the claim is based was completed. *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987). The date of a claim's accrual is a question of law which we review *de novo*. *Chambers v. Conaway*, 883 S.W.2d 156, 159 (Tex. 1993) (determining when a plaintiff's cause of action accrues under any of the three categories is a question of law, not fact). A plaintiff may not simply choose the most favorable date that falls within the statute's three categories. *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001). Rather, if the date the alleged breach or tort occurred is ascertainable, then limitations begins to run from that date and further inquiry into the second and third categories is unnecessary. *Id.* The statute recognizes there may be situations where the exact date of the breach or tort cannot be ascertained and "[t]he second category . . . contemplates such a situation 'wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment.'" *Id.* (quoting *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987)). "But before the last treatment date becomes relevant to determining when limitations begins, the plaintiff must establish a course of treatment for the alleged injury." *Id.* (citing *Rowntree v. Hunsucker*, 833 S.W.2d 103, 105 (Tex. 1992)). Whether the plaintiff established the existence of a course of treatment is only relevant if the date the breach or tort was committed cannot be determined. *Id.* (citing *Husain v. Khatib*, 964 S.W.2d 918, 919-20 (Tex. 1998)).

The legal issue of the date of accrual is presented to us within the summary judgment context. A defendant moving for summary judgment based on an affirmative defense such as limitations must conclusively prove all the elements of the defense and establish as a matter of law that the statute of limitations bars the action. *Shah*, 67 S.W.3d at 842; *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). If the movant establishes a statute of limitations defense, the non-movant must then produce summary judgment evidence in avoidance of the limitations bar. *Streetman v. Nguyen*, 943 S.W.2d 168, 170 (Tex. App.—San Antonio 1997, no pet.) (citing *Zale Corp. v.*

*Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975)). We review a trial court's ruling on a summary judgment motion *de novo*. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In conducting our review, we view the competent summary judgment evidence in the light most favorable to the non-movant and resolve any doubts in the non-movant's favor. *Id.* at 548-49; *Diversicare General Partners, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005).

On appeal, Dr. Vemulapalli and CASA argue the trial court's order denying summary judgment must be reversed because the accrual date of the alleged torts is readily ascertainable as the last date Dr. Vemulapalli saw Cameron and cleared him to play basketball: July 18, 2016. Because the date the breach or tort occurred can be readily ascertained as the date of the last office visit, the limitations analysis is complete; there is no need to perform a "continuing course of treatment" analysis. Alternatively, Dr. Vemulapalli and CASA assert Moore failed to establish a course of treatment because his claims are based on a failure to treat Cameron's actual heart condition and a failure to treat cannot establish a course of treatment. *See Bala v. Maxwell*, 909 S.W.2d 889, 892 (Tex. 1992).

Moore argues that the "continuing course of treatment" analysis is controlling and leads to the date of accrual being the date of Cameron's death, i.e., October 4, 2016, when Dr. Vemulapalli's treatment necessarily ended. Moore contends the date of occurrence of the tort(s) cannot be ascertained because Dr. Vemulapalli continuously breached his duty to properly diagnose and treat Cameron's actual heart condition (SCD) every day -- beginning with the first time Dr. Vemulapalli saw Cameron, continuing on each successive office visit as well as between office visits, and finally ending on the date of Cameron's death. In support, Moore relies on Dr. Bailey's affidavit stating the applicable standard of care required Dr. Vemulapalli to continually reevaluate his initial mistaken diagnosis of congestive heart failure, run additional tests to make a correct diagnosis of an electrical irregularity, and refer Cameron to a specialized cardiologist

trained in electrophysiology for the proper SCD treatment.[1]  In opining that Dr. Vemulapalli's treatment of Cameron continued past the date of the last office visit on July 18, 2016, Dr. Bailey points out that, although Dr. Vemulapalli cleared Cameron to play basketball at that visit, he also instructed Cameron to continue taking the medications and to return for a follow-up appointment in six months; nothing in the medical records states that Dr. Vemulapalli released Cameron from his care.

Moore's petition does not allege that Cameron's injury, i.e., his death, was caused by the actual treatment regimen prescribed by Dr. Vemulapalli which consisted of medications and monitoring of the heart's functioning with echocardiograms.  Instead, the gist of Moore's claims is that Dr. Vemulapalli breached the applicable standard of care by failing to properly diagnose and treat Cameron's actual heart condition of SCD, or at least recognize the signs of an electrical irregularity in the heart and refer him to a cardiac electrophysiologist for proper treatment. Ultimately, Moore contends Dr. Vemulapalli was negligent in clearing him to resume playing basketball without properly diagnosing and treating his SCD heart condition.  Certainly, the date of Dr. Vemulapalli's breach with respect to granting the clearance is readily ascertainable as July 18, 2016 based on the summary judgment evidence.  The rest of the breaches alleged by Moore consist of Dr. Vemulapalli's failure to take certain actions required by the standard of care defined by Dr. Bailey which would have led to a corrected diagnosis and proper treatment of Cameron's actual condition of SCD before any clearance to return to basketball.

Where allegations of medical negligence are based on failure to diagnose a condition, limitations begins to run from the date of the last doctor visit. *Rowntree*, 833 S.W.2d at 108; *see*

---

[1] Dr. Bailey's affidavit states the applicable standard of care requires a general cardiologist like Dr. Vemulapalli to recognize the signs of an electrical problem with the heart and then refer a patient like Cameron with SCD to a cardiac electrophysiologist for specialized testing and treatment.  He opines that Dr. Vemulapalli's failure to do so was an "egregious breach" of the applicable standard of care.

*Chambers*, 883 S.W.2d at 158 (cause of action for negligent failure to diagnose breast cancer accrued on date of last appointment when physician failed to perform follow-up diagnostic tests based on patient's complaint of a lump in her breast or refer patient to another physician for such tests). Similarly, a physician's negligent failure to perform follow-up procedures arises only in connection with the last examination. *Winston v. Peterek*, 132 S.W.3d 204, 207 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Bala v. Maxwell*, 909 S.W.2d 889, 892 (Tex. 1995)). Here, the last opportunity that Dr. Vemulapalli had to examine Cameron and revise his diagnosis was at Cameron's last office visit on July 18, 2016. *See Rowntree*, 833 S.W.2d at 108 (holding physician could have breached his duty to perform the proper exams to detect occluded arteries that led to stroke *only* on those occasions when he had an opportunity to examine the patient; limitations therefore ran from date of last office visit) (emphasis added). As Dr. Bailey noted in his affidavit, Dr. Vemulapalli already had all the data necessary for him to correct his diagnosis at the last office visit.

Moore argues that, based on Dr. Bailey's affidavit, Dr. Vemulapalli continually breached the standard of care every time he failed to make a corrected diagnosis of an electrical dysfunction and/or SCD, failed to refer Cameron to a specialist for a proper course of treatment for SCD, and failed to withdraw the clearance -- up until Cameron's death. However, it is well-established that the continuing nature of a diagnosis does not extend the tort for limitations purposes. *See Bala*, 909 S.W.2d at 892 (rejecting the plaintiffs' argument that, by failing to diagnose cancer and initiate a treatment in 1987, the doctor's negligence continued until the cancer was discovered years later); *Rowntree*, 833 S.W.2d at 108; *see also Streetman*, 943 S.W.2d at 170 (mere existence of an ongoing physician-patient relationship does not extend the tort for limitations purposes). Similar to Dr. Bailey's affidavit, the plaintiff's expert affidavit in *Chambers* stated the doctor had a continuing duty to follow up on the patient's complaints about a breast lump at subsequent visits

and failed to do so; the court held the doctor's duty extended "up to the last appointment between them" at which time the breach of duty occurred for purposes of the limitations period. *Chambers*, 883 S.W.2d at 158. As the court reiterated, the question of when a claim accrues is one of law, not fact. *Id.* at 159.

The flaw in Moore's argument that the "course of treatment" analysis controls in this case is that "the date of last treatment is relevant only if a course of treatment has been established *for the condition* that is the subject of the claim." *Rowntree*, 833 S.W.2d at 105 (emphasis added). Here, Dr. Vemulapalli was treating Cameron for congestive heart failure, rather than for his actual heart condition, SCD, which went undiagnosed and untreated. As the court has noted, "[w]hile the failure to treat a condition may well be negligent," it is "self-contradictory" to accept that a failure to establish a course of treatment for a particular condition constitutes a "course of treatment" for purposes of limitations. *Id.* at 105-06; *Bala*, 909 S.W.2d at 892. Moore does not allege that the medications prescribed by Dr. Vemulapalli as treatment for congestive heart failure were the cause of Cameron's sudden cardiac arrest and death. *See Rowntree*, 833 S.W.2d at 108; *see also Winston*, 132 S.W.3d at 208 ("[i]n order to use a course-of-treatment analysis in connection with prescription drugs, the alleged drug treatment must be the direct cause of the injury.").

We conclude that the occurrence of the breach or tort on which Moore's claims are based occurred on a date that can be determined under the first category of section 74.251(a). The date of Cameron's last appointment with Dr. Vemulapalli on July 18, 2016 is the date of accrual.

## CONCLUSION

Based on the foregoing reasons, we hold that Moore's claims are barred by the two-year statute of limitations. We therefore reverse the trial court's order denying the summary judgment motion by Dr. Vemulapalli and CASA and render a take-nothing judgment.

Liza A. Rodriguez, Justice